**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Caroll A. WATKINS, Defendant–
Appellant.**

**No. 92–5830.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1992.

Decided June 1, 1993.

William Cohen, Asst. U.S. Atty. (argued), Ernest W. Williams, U.S. Atty.; Nancy Jones, Asst. U.S. Atty. (briefed), Nashville, TN, for plaintiff-appellee.

C. Douglas Thoresen, Asst. Federal Public Defender (argued and briefed), Nashville, TN, for defendant-appellant.

Before: KENNEDY and BATCHELDER, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Caroll Watkins appeals the sentence imposed following her conviction for check kiting. She argues that the sentencing court erred in calculating the amount of loss by relying on the face value of the worthless

checks that she presented rather than on the amount of cash that she succeeded in withdrawing against those checks. She also argues that the court erred in denying her a two-point reduction for acceptance of responsibility on the grounds that she had engaged in similar conduct after her arraignment. Because of uncertainties in the record and the absence of adequate findings by the sentencing judge, we are unable to complete our statutory duty of review. We therefore vacate the sentence and remand.

## I

From late March through mid-May of 1991, Watkins engaged in check kiting schemes involving five separate banks in the Nashville area. In each case, Watkins deposited worthless checks into an account that she had just opened, often under an alias. Watkins quickly proceeded to make cash withdrawals against those funds before the bank could determine that the deposited checks were not backed by sufficient funds. Her schemes were interrupted at each bank in various stages of completion.

Watkins pleaded guilty to a one-count information charging her with defrauding the Nashville Bank of Commerce in violation of 18 U.S.C. § 1344. In accordance with Rule 32(c) of the Federal Rules of Criminal Procedure and section 6A1.1 of the U.S. Sentencing Commission's *Guidelines Manual* ("U.S.S.G." or "guidelines"), the probation department prepared a presentence report. That report set forth in great detail the factual allegations supporting the recommended sentence. The report described the scheme that resulted in the defrauding of the Nashville Bank of Commerce, as well as similar schemes involving First Tennessee Bank, Sovran Bank, Metropolitan Federal Savings & Loan, and First American National Bank.

Although the record is somewhat unclear, the presentence report appears to describe approximately 22 separate transactions, perhaps more. Based on this evidence, the probation report concluded that Watkins had presented for payment or deposit checks totalling $42,600, and that she had succeeded in obtaining cash in the amount of $13,100.[1] While there is some dispute as to the total number of checks involved, Watkins concedes that the total face amount of those checks exceeded $40,000, and that she succeeded in obtaining $13,100.

While Watkins was awaiting sentencing, she attempted to open an account at South-Trust Bank ("STB") in the name "Caroll Fisher." Her initial deposit was a $50 check drawn on her ex-husband's account, which she executed by signing her ex-husband's name. When a bank official learned that Watkins's ex-husband's account had been closed, the official refused to complete the opening of the account.[2] The next day, Watkins attempted to deposit a $3,000 check, drawn on another closed account, into the STB account. The bank accepted this check for deposit because bank procedures did not provide for the confirmation of the existence of accounts into which funds were deposited. Later that day, Watkins attempted to pay for a purchase with a $50 check drawn on the STB account. The merchant contacted the bank and was informed that the account was invalid. When he informed Watkins of this, she drove to the bank and attempted to cash a $500 check drawn on the account. While the branch manager was attempting to determine the status of the account, Watkins became agitated and abruptly left the bank.

Watkins was sentenced under U.S.S.G. § 2F1.1 and assigned a base offense level of 6. The sentencing court adopted the presentence report's recommendation that, since the "intended" loss exceeded $40,000, the offense level be increased by five points pursuant to section 2F1.1(b)(1)(F).[3] The court

---

**1.** According to the probation department's summary, Watkins obtained $4,100 from Nashville Bank of Commerce, $6,500 from Sovran Bank and $2,500 from First American National Bank.

**2.** The bank official left a message on Watkins's answering machine informing her that the account would not be opened and requesting that she return the starter checks she had been given.

Watkins evidently received this message, for she eventually returned the unused starter checks.

**3.** Section 2F1.1(b)(1) of the Guidelines, covering offenses involving fraud and deceit, provides that the base offense level of six is to be enhanced as follows:

also adopted the recommendation that the offense level be augmented by two points pursuant to section 2F1.1(b)(2) to reflect the existence of more than minimal planning. Finally, the court adopted the report's recommendation that, in light of Watkins's apparent inability to refrain from engaging in similar conduct, she be denied a two-point reduction for acceptance of responsibility.

Accordingly, the court assigned Watkins a total offense level of 13. This resulted, in combination with a criminal history category of II, in a sentencing range of 15–21 months. The court sentenced Watkins to 15 months' incarceration and three years' supervised release, and directed restitution in the amount of $13,100.

## II

Appellate review of sentences imposed pursuant to the guidelines is generally governed by 18 U.S.C. § 3742. *See U.S. v. Morrison*, 983 F.2d 730 (6th Cir.1993). Under section 3742, we review *de novo* a sentencing court's interpretation of the guidelines, but we must uphold a sentencing court's factual findings unless they are clearly erroneous. *Id.* Furthermore, those factual findings need not be based upon proof beyond a reasonable doubt, but need only be supported by a preponderance of the evidence. *U.S. v. Carroll*, 893 F.2d 1502, 1506 (6th Cir.1990). With these principles in mind, we turn to the merits of Watkins's appeal.

### A

Watkins argues first that the sentencing court erred in calculating the amount of loss by relying on the total amount of deposits rather than on the amount of cash withdrawn against them. In response, the government

points to application note 7 in the commentary to U.S.S.G. § 2F1.1, which deems relevant for sentencing purposes the intended amount of loss. The government argues that Watkins intended to withdraw cash representing the total face value of all of the checks that she had deposited. That total, under this view, controls as the relevant amount of loss for purposes of sentencing.

The government is correct that section 2F1.1 focuses upon the intended or attempted loss as opposed to proved actual loss. Application note 7 of the commentary to the U.S.S.G. § 2F1.1 provides that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Although this language may appear somewhat broad, several principles limit its reach. First, the application note must be read in conjunction with section 2X1.1(b)(1), which governs attempts. That section provides that the offense level for an attempt is three levels lower than for the completed offense.

Section 2X1.1(b)(1) further provides that the offense level need not be reduced if

the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

Thus, for intended loss to be deemed relevant under application note 7 to section 2F1.1, the defendant's conduct must meet the requirements of section 2X1.1(b)(1). If the defendant's conduct does not meet those requirements, that conduct qualifies only as an attempt, and section 2X1.1(b)(1) directs that the offense level be reduced accordingly.[4]

---

If the loss exceeded $2,000, increase the offense level as follows:

*Loss (Apply the Greatest) Increase in Level*

\* \* \*

| | | |
|---|---|---|
| (D) More than $10,000 | add 3 |
| (E) More than $20,000 | add 4 |
| (F) More than $40,000 | add 5 |

\* \* \*

4. Where the offense was partially completed, application note 4 to section 2X1.1 sets forth the proper procedure. The commentary to that section provides:

In certain cases the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense. In

A second limitation on the broad reach of the "intended loss" rule is that the intended loss must have been possible to be deemed relevant. *U.S. v. Khan*, 969 F.2d 218, 221 (6th Cir.1992) ("the fraud loss must reflect 'economic reality.'") (quoting *U.S. v. Schneider*, 930 F.2d 555, 559 (7th Cir.1991)). *See also U.S. v. Santiago*, 977 F.2d 517 (10th Cir.1992). Regardless of the defendant's intent, the defendant may not be sentenced on the basis of harm that he or she was incapable of inflicting. *Id.*

Thus three factors must be present for an amount of loss to be relevant under section 2F1.1. First, as application note 7 instructs, the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for interruption, all of the acts necessary to bring about the loss.

■ Although the record frustrates a more careful analysis, it appears that all three of these limitations may be relevant here. First, Watkins's intent is at issue, because she argues she never intended to withdraw as cash all of the checks that she deposited. Second, the extent to which Watkins completed her schemes and the events that prevented her from bringing her schemes to fruition, are also relevant since those schemes were interrupted at various stages of completion. Finally, the extent to which Watkins was capable of causing the full amount of the loss is also at issue, since realistically the record suggests that Watkins

could not have withdrawn the full amount of every check that she deposited.[5]

The government presented no evidence regarding these issues at the sentencing hearing. The sentencing court therefore had to rely exclusively on the contents of the presentence report in making its findings regarding the relevant amount of loss. We have that report, and conclude that it does not provide a sufficient basis for the sentencing court's findings. The report contains very little if any evidence that Watkins intended to, or could have, completely drained her accounts of the funds purportedly contained therein. Indeed, the report fails to support the sentencing court's findings concerning the total face amount of checks. Accordingly, we vacate the sentence and remand to the district court with instructions to make more specific findings in accordance with this opinion.

We recognize that our remand may have no effect on Watkins's sentence. First, the district court may, at resentencing, find that the relevant amount of loss is greater than $40,000. Further, we are aware that Watkins's sentence—fifteen months—falls within the range of available sentences as long as the relevant amount of loss is deemed to be anywhere from $10,000 to $70,000.[6] Nonetheless, the sentencing court's original sentence, at the bottom of the appropriate range, suggests that the court might have been inclined to impose an even lower sentence, given the opportunity to do so.[7] We

---

such cases, the offense level for the count (or group of closely-related multiple counts) is whichever of the following is greater: the offense level for the intended offense minus three levels (under section 2X1.1(b)(1), (b)(2), or (b)(3)(A)), or the offense level for the part of the offense for which the necessary acts were completed (or about to be completed but for apprehension or interruption). For example, where the intended offense was the theft of $800,000 but the participants completed (or were about to complete) only the acts necessary to steal $30,000, the offense level is the level for the theft of $800,000 minus three levels, or the offense level for the theft of $30,000, whichever is greater.

5. Specifically, the record contains indications that the sentencing judge might have counted some funds twice by adding together several transactions involving the same amount of bogus

funds. For example, if Watkins deposited a worthless $1,000 check into bank *A*, wrote a check against those funds for deposit into bank *B*, and then wrote a check for $1,000 cash against the funds in bank *B*, the relevant figure for purposes of sentencing is not $3,000, but $1,000.

6. If the amount of harm is deemed to be between $10,000 and $20,000, the sentencing court may select from a range of ten to sixteen months. If the harm is between $20,000 and $40,000, the court may select a sentence anywhere between 12 and 18 months. U.S.S.G. §§ 2F1.1(b)(1)(D)--(G).

7. We note also that, in light of Watkins's current release date—October 8, 1993—and in light of the possibility that the district court might resentence Watkins to a lesser term, the court may

do not suggest it necessarily should have; that is the province of the sentencing judge.

**B**

Watkins next contends that the sentencing court should have granted her a two-point reduction to reflect her acceptance of responsibility. In light of our decision to remand this case for resentencing, we need not address this issue. *U.S. v. Gessa,* 971 F.2d 1257, 1267 (6th Cir.1992) (en banc); *U.S. v. Taylor,* 933 F.2d 307, 313 (5th Cir.1991). Because this issue will no doubt arise at resentencing, however, we provide the district court with instructions in the interest of judicial economy. *Taylor,* 933 F.2d at 313; *Ryder Truck Lines, Inc. v. Teamsters Freight Local No. 480,* 705 F.2d 851, 858 (6th Cir.1983).

■■■ The question of the extent to which a defendant has accepted responsibility for criminal conduct is generally deemed a question of fact, and the sentencing court's findings in this regard will not be overturned unless clearly erroneous. Furthermore, the burden of establishing this mitigating factor remains at all times on the defendant, who must "clearly demonstrate" acceptance of responsibility. U.S.S.G. § 3E1.1(a). Here, evidence established that Watkins deposited into a new account at SouthTrust Bank a $50 check drawn on the closed account of her ex-husband and a $3,000 drawn on another closed account. The record also reveals that Watkins attempted to cash not one but two checks against the funds purportedly contained in the new account. Finally, there was evidence that Watkins became agitated when the branch manager decided to look into the problem and that she abruptly left the bank.

We find that this evidence shows clearly that Watkins either cannot or will not stop engaging in the type of behavior that resulted in the sentence from which she appeals. Accordingly, we cannot deem clearly erroneous the sentencing court's finding that Wat-

kins had not accepted responsibility for her conduct.

**III**

For the foregoing reasons, we VACATE the sentence and REMAND the cause for resentencing consistent with this opinion.

---

wish to consider entertaining a motion for release pending resentencing pursuant to Rule 46(c) and 18 U.S.C. § 3143(a).