19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David M. WEBER, Defendant-Appellant.
 No. 93-3889.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant David M. Weber appeals the sentence imposed by the district court following his guilty plea to one count of unauthorized use of access devices (credit cards) in violation of 18 U.S.C. Sec. 1029(a)(2). On appeal, the issues are (1) whether the district court committed clear error in attributing the value of merchandise fraudulently ordered by others as well as the value of merchandise ordered, but not delivered, through the use of stolen credit card numbers furnished by defendant in its determination of defendant's offense level under United States Sentencing Guidelines ("U.S.S.G.") Sec. 2F1.1, and (2) whether the district court abused its discretion in ordering the defendant to pay $2,970.81 in restitution. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On April 29, 1993, a one-count information was filed by the United States Attorney for the Southern District of Ohio, charging defendant David M. Weber with unauthorized use of access devices in violation of 18 U.S.C. Sec. 1029(a)(2). On May 17, 1993, defendant pled guilty to the charge in the information. Defendant's guilty plea was entered pursuant to a plea agreement under Federal Rule of Criminal Procedure 11.
 
 
 3
 Defendant Weber was sentenced on August 16, 1993. After considering and overruling defendant's objections to the presentence report, the district court found that defendant's total offense level was ten, which when combined with his criminal history category, category I, resulted in a guideline sentencing range of six to twelve months imprisonment. Defendant was sentenced to six months imprisonment to be followed by two years of supervised release and was ordered to pay $2,970.81 in restitution. This timely appeal followed.
 
 B.
 
 4
 Based upon the presentence report, the undisputed facts which culminated in defendant's guilty plea are as follows: On March 12, 1993, an agent of the United States Secret Service was contacted by a customer service representative for PC Connections, a business located in Marlow, New Hampshire. The customer service representative advised the Secret Service that his company had received five orders for computer equipment and that each order used fraudulent credit card numbers. The five orders had originated in the Columbus, Ohio, area.
 
 
 5
 The customer service representative further indicated that two of the fraudulent orders had been filled and that the computer equipment had been sent to the shipping addresses given by the users of the fraudulent credit cards. One order was placed on March 10, 1993, for a Compaq Light Notebook Computer and was shipped to 1615 Highland, Apt. 3, Columbus, Ohio 43201, to a fictitious addressee named Terrance Rogovin. The value of the order, including shipping, was $3,705.19. A second order was placed on March 11, 1993, for various items including a computer printer and a computer cable. The value of the order, including shipping, was $2,236.44. This order was delivered on March 12, 1993, to 2138 N. 4th St., Apt. F, Columbus, Ohio 43201, under the fictitious name Leo E. Knight, Jr. Three other orders were placed with PC Connections. However, these orders were not filled, because PC Connections' ordering equipment was equipped with caller I.D. and PC Connections was able to determine that none of the three telephone numbers given by the caller who placed the order was the correct number for the telephone from which the caller was placing the orders.
 
 
 6
 The investigation by the Secret Service revealed that Noel Mills rented Apartment 7 at 1615 Highland Street and took delivery of the Compaq Light Notebook Computer. The address given when the computer was ordered, Apartment 3, was only four units away from Mills' apartment. The other address, 2138 N. 4th St., Apt. F, was a vacant apartment. Mills obtained the notice of delivery left by United Parcel Service when no one was at the residence, and he later used the notice of delivery to pick up the parcel from UPS.
 
 
 7
 The three additional orders which were placed with PC Connections but not delivered involved an order on March 10, 1993, for a Compaq Light Computer valued at $3,499; an order on March 12, 1993, for an Epson Image Scanner and related software valued at $1,524; and an order on March 14, 1993, for Compaq Proline equipment valued at $2,274. Although none of the orders were shipped, they were fraudulent orders using stolen credit card numbers obtained by defendant. Two of the three orders were placed using the telephone numbers assigned to Noel Mills' residence at 1615 Highland Street, Apt. 7.
 
 
 8
 On March 15, 1993, the Secret Service arranged controlled delivery of computer equipment with PC Connections and Airborne Express. An attempt was made to deliver one of the unshipped fraudulent orders previously discussed. On March 16, 1993, Airborne Express attempted to deliver an Epson Scanner to 2138 N. 4th St., Apt. F. No one was present at that location, and the apartment appeared vacant. Airborne Express left a note for the package to be picked up later. An individual who identified himself as John Whirret subsequently contacted Airborne Express inquiring about the package; however, no one picked up the package, and it was returned to PC Connections.
 
 
 9
 On March 25, 1993, the Secret Service attempted to contact Noel Mills at the residence of David Rodgers,[1] which is located at 4750 Carnahan Road, Columbus, Ohio. During their investigation, the Secret Service had determined that Mills used David Rodgers as a reference for his lease agreement and that Rodgers was listed as Mills' stepfather on the lease agreement. After answering the door to his residence and identifying himself as David Rodgers, Rodgers told the agents that he did not know Noel Mills. However, after being informed that the telephone at his residence had been used to place orders for computer equipment utilizing fraudulent credit card numbers, Rodgers admitted that he knew Mills and agreed to an interview with the Secret Service.
 
 
 10
 During the interview, the Secret Service agents observed a lap-top computer in plain view in the kitchen area of the residence. Rodgers and another occupant of the residence denied ownership of the computer, which was determined to belong to PC Connections. Rodgers then consented to a search of the apartment, which resulted in the seizure of the following items of evidence: Compaq LTE Light lap-top computer ($3,700); Xerox 5220 copier ($2,000); Brother Intelafax 700 desk-top facsimile machine ($500); two coin-operated vending machines ($200); Xerox black dry ink cartridge recorder ($100); Compaq user's guide manuals; various catalogs; individual room charge billings for the Quality Inn in Columbus; and a computer printout of student tracking and academic reporting from DeVry Incorporated. The total value of all the items seized was $6,505. Rodgers admitted that he was holding all of the equipment for Noel Mills, that he knew the paper work contained credit card numbers, and that the objects he was holding for Mills had been obtained fraudulently.
 
 
 11
 On March 29, 1993, Rodgers went to the Secret Service Office in Columbus, Ohio, and in the presence of two agents engaged in a consensually monitored telephone conversation with Mills. During the conversation, Mills made incriminating statements concerning the items recovered from Rodgers' apartment at 4750 Carnahan and also admitted that the items recovered from Rodgers' residence were being stored there at Mills' request.
 
 
 12
 That same day, agents of the Secret Service went to Mills' apartment at 1615 Highland Street, and, after being permitted to enter the apartment, they observed two vending machines in plain view in the living room. While the agents were there, Claretta Daniels, a friend of Mills, arrived at the apartment. She stated that Mills had recently given her a laser jet printer, and she identified the laser printer from a catalog which a Secret Service agent showed her. Mills was arrested and the two coin vending machines were seized by the Secret Service. An agent accompanied Ms. Daniels to her residence and she turned over the laser jet printer. The investigation revealed that this printer had been previously shipped by PC Connections to 2138 N. 4th Street, Apt. F, in Columbus on March 11, 1993.
 
 
 13
 After his arrest, Mills stated that he wished to confess his involvement in the present offenses. Mills admitted that he was involved in ordering large quantities of merchandise through the mail using fraudulent credit card numbers which he obtained from defendant Weber. Mills stated that he received large packets of photocopies of hotel billing statements from defendant David M. Weber, allegedly in order for Mills and David Rodgers to order merchandise for Weber. Mills stated that Weber obtained these statements while he worked as a night front-desk clerk at the Quality Inn in Columbus, Ohio. Mills also told the agents that he had in his possession a TV, VCR, microwave, and stereo system that had been ordered using fraudulent credit card numbers.
 
 
 14
 A consent search of Mills' apartment resulted in the confiscation of the following items: a Sharp 19" color television ($300); a Mitsubishi video cassette recorder ($200); a Mitsubishi video cassette recorder remote control ($40); a Samsung Classic Collection II microwave ($200); and a Sony bookshelf stereo system and equipment ($1,000). The total value of the merchandise seized was approximately $1,740.
 
 
 15
 Based upon information obtained from Claretta Daniels, the Secret Service determined that Scott Woods, who resided at 4671 Refugee Road, Apt. 3E, also unknowingly possessed fraudulently obtained merchandise from Mills. An agent of the Secret Service contacted Woods and was permitted to search his apartment. The following items were seized as a result of the search: a Cannon PL 12 copy machine; 631 Quality Inn Hotel billing statements; a check cashing card in the name of David Weber; a Discover Card in the name of Michele Beck; an AT & T corporation card in the name of Curtis 1000 Incorporated; Lazarus credit card application forms; Sears credit card application forms; hotel room keys from the Quality Inn; and envelopes containing personal notes, telephone numbers, and miscellaneous items.
 
 
 16
 On March 29, 1993, Mills made a consensually monitored telephone call to defendant David M. Weber. During the call, Weber made several incriminating statements. Weber was overheard instructing Mills to bring over a lap-top computer, printer, and copy machine that had been ordered.
 
 
 17
 On April 7, 1993, Mills told the Secret Service in Columbus that he had set up a meeting that day to return some merchandise to Weber. The meeting was monitored by Secret Service Agents and the Columbus Police Department. After the transfer of merchandise from Mills to Weber, Weber was arrested. After Weber's arrest, Mills produced six American Express credit card receipts which he stated that Weber had given him during the transfer of the merchandise.
 
 
 18
 Immediately following Weber's arrest, a federal search warrant was executed at his residence, 148 S. Powell Avenue, Apartment D, Columbus, Ohio. The following items were recovered: a Collectors Edition Monopoly set; one empty box for a Cannon PC 12 copy machine; two cherry, four-drawer filing cabinets; a box of collectibles, including Hummel glassware and artifacts; Lladro figurines; wooden figurines; collectible dinosaur figures; Star Trek memorabilia; Art Mark crystal; one box containing six Star Trek VHS tapes; two Indiana Jones VHS tapes; six leather-bound books; one box of various memorabilia, models, kids play glasses, periodicals, and other children's articles; one box containing miscellaneous papers and periodicals; a fraudulent state identification card in the name of Steven N. Popivich, which bore Weber's photograph; a copy of a sales receipt using Visa number 4271-3820-0811-7544 in the name of R.J. Hanley; and one yellow notebook pad outlining purchases made and credit card numbers used to make purchases. The total value of the items seized was estimated as $1,870.
 
 
 19
 Defendant Weber had access to various credit card numbers as a result of his job as a night auditor at the Quality Inn, which is located at 175 E. Town St. in Columbus, Ohio. As a night auditor, Weber was required to balance the daily receipts at the Quality Inn which allowed him access to credit card vouchers. Weber copied the credit card vouchers, which provided him with the credit card numbers. The defendant admitted that he stole between 600 and 900 credit card numbers from the Quality Inn between April 1992 and April 1993. He admitted giving many of the credit card numbers to Noel Mills and stated that he had ordered items through the mail approximately twenty to thirty times during the course of the year. Defendant Weber became acquainted with Mills when he began living with Mills' mother, Kathy Mills. Weber's version of the events differs from that of Mills in that he asserts that Mills persuaded him to participate in the criminal scheme and to provide the stolen credit card numbers to Mills, who would either sell them or use them to order merchandise.
 
 II.
 A.
 
 20
 Defendant Weber argues that the district court erred in overruling his objection to the inclusion of $7,297.00 as intended loss for purposes of U.S.S.G. Sec. 2F1.1. In the presentence report, the probation officer determined that the total loss attributable to defendant Weber from the use of the stolen credit card numbers was $21,743.00, which resulted in a four-level enhancement to defendant's offense level under U.S.S.G. Sec. 2F1.1(b)(1)(E). The probation officer arrived at the $21,743.00 figure as follows: $1,870 for merchandise ordered and received by Weber using the stolen credit card numbers; $6,071 worth of merchandise ordered and received by Noel Mills using stolen credit card numbers; $6,505 worth of merchandise possessed by David Rodgers and ordered using the stolen credit card numbers; and $7,297 for the three additional orders to PC Connections which were made using the stolen credit card numbers but were never delivered.
 
 
 21
 Defendant Weber asserts that the $7,297 should not be included in the calculation of loss under U.S.S.G. Sec. 2F1.1 because he never received the goods which had been ordered. Specifically, defendant asserts that an attempt to defraud cannot be included in the guidelines when "it is not consummated." Appellant's Brief at 4.
 
 
 22
 "In considering challenges to a sentence imposed pursuant to the sentencing guidelines, this court applies a clearly erroneous standard of review to the district court's factual findings." United States v. Carr, 5 F.3d 986, 993 (6th Cir.1993) (citing United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991)); see also United States v. Willis, 997 F.2d 407, 417 (8th Cir.1993) ("We review the district court's calculation of loss under U.S.S.G. Sec. 2F1.1 as a factual issue under the clearly erroneous standard."), cert. denied, 114 S.Ct. 704 (1994). Further, while this court gives due deference to the district court's application of the guidelines to the facts, it reviews the district court's legal conclusions de novo. Carr, 5 F.3d at 993.
 
 
 23
 The commentary to U.S.S.G. Sec. 2F1.1 states:
 
 
 24
 Valuation of loss is discussed in the Commentary to Sec. 2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. Consistent with the provisions of Sec. 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.
 
 
 25
 U.S.S.G. Sec. 2F1.1, comment. (n. 7).
 
 
 26
 In United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993), we held that Sec. 2F1.1 focuses on the intended or attempted loss as opposed to proved actual loss. See also United States v. Kopp, 951 F.2d 521, 536 (3d Cir.1991) ("We ... hold that fraud 'loss' is, in the first instance, the amount of money the victim has actually lost (estimated at the time of sentencing), not the potential loss as measured at the time of the crime. However, the 'loss' should be revised upward to the loss that the defendant intended to inflict, if that amount is higher than actual loss.").
 
 
 27
 However, this court has held that in a situation involving attempted, as opposed to actual, fraud, application note 7 to U.S.S.G. Sec. 2F1.1 "must be read in conjunction with section 2X1.1(b)(1), which governs attempts." Watkins, 994 F.2d at 1195. U.S.S.G. Sec. 2X1.1(b)(1) provides that the offense level for an attempt is three levels lower than the completed offense. Section 2X1.1(b)(1) further provides, however, that the offense level should not be reduced where "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."
 
 
 28
 Thus, this court has held that "for intended loss to be deemed relevant under application note 7 to section 2F1.1, the defendant's conduct must meet the requirements of section 2X1.1(b)(1)." Watkins, 994 F.2d at 1195. Furthermore, this court has imposed an additional limitation on the intended loss rule; namely, that for the intended loss to be deemed relevant, it must have been possible. Id. at 1196. A "defendant may not be sentenced on the basis of harm that he or she was incapable of inflicting." Id. See also Carr, 5 F.3d at 994:
 
 
 29
 three factors must be present for an amount of loss to be relevant under section 2F1.1. First, ... the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for interruption, all of the acts necessary to bring about the loss (quoting Watkins, 994 F.2d at 1196).
 
 
 30
 In this instance, the district court was not clearly erroneous in concluding that the $7,297 was intended loss. First, defendant Weber provided the stolen credit card numbers to Mills. Second, computer equipment had been ordered and received from PC Connections using stolen credit card numbers which Weber obtained from the Quality Inn. Third, the three unfilled orders were placed from Mills' telephone to PC Connections, and only a fortuitous interruption; viz., the fact that PC Connections had installed caller I.D. on its telephone ordering equipment, prevented the shipment of the computer equipment from the three orders. Thus, it is clear that the $7,297 was intended as a loss to PC Connections since the orders were placed using stolen credit card numbers. Moreover, the loss was "possible" because similar stolen credit card numbers had been successfully used to obtain merchandise from this same victim, PC Connections. Therefore, contrary to defendant's assertions, the district court did not commit clear error in including the $7,297 as intended loss merely because the merchandise had not been received from the intended victim.
 
 B.
 
 31
 Defendant Weber also argues that the district court committed clear error in including the $6,505 of merchandise received by David Rodgers in the calculation of loss under U.S.S.G. Sec. 2F1.1 because that loss was not reasonably foreseeable to Weber.
 
 In its judgment the district court stated:
 
 32
 Pursuant to the same objection, the Defendant objects to the inclusion of $6,505 in the calculation of loss in this case. The probation officer included that amount to reflect merchandise recovered from David Rogers. The Defendant argues that he did not give credit card numbers to David Rogers and was, thus, not responsible for the loss.
 
 
 33
 The Court finds that the Defendant reasonably could have foreseen that Noel Mills would give unlawfully obtained credit card numbers to others. Accordingly, the Court finds that the inclusion of the $6,505 of loss related to items obtained by David Rogers was properly included. The Defendant's objection is OVERRULED.
 
 
 34
 J.A. 16. At the sentencing hearing the district court also stated that
 
 
 35
 [w]ith regard to the $6,505 ... Mr. Weber certainly could reasonably have foreseen that Mr. Mills would give the unlawfully obtained credit card numbers to other people, and the fact that he did pass it on to Mr. Rodgers, I think, should be charged to Mr. Weber. And I find that the inclusion of the $6,505 loss related to the items obtained by David Rodgers was properly included. And I think ... there is certainly a preponderance of the evidence in support of the probation officer's determination.
 
 
 36
 J.A. 26-27.
 
 
 37
 Application note 2 to U.S.S.G. Sec. 1B1.3, the relevant conduct provision of the guidelines, states in relevant part:
 
 
 38
 In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B) [jointly undertaken criminal activity], the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.
 
 
 39
 U.S.S.G. Sec. 1B1.3, comment. (n. 2).
 
 
 40
 In this case, the district court's inclusion of the $6,505 as loss attributable to Weber was not clearly erroneous. The evidence clearly shows that the criminal activity jointly undertaken by Weber and Mills involved the transfer of stolen credit card numbers obtained by Weber to Mills. Clearly, once Weber provided the credit card numbers to Mills, it was intended that Mills would use the stolen credit card numbers, either by ordering merchandise using the stolen credit card numbers or by providing or selling the stolen credit card numbers to others. Thus, although defendant Weber may not have known David Rodgers, the district court's finding that the merchandise held by Rodgers was attributable to Weber is not clearly erroneous, because once Weber passed the stolen credit card numbers on to Mills, it was reasonably foreseeable that Mills would pass some of those numbers on to other persons, and but for Weber's obtaining the credit card numbers, Rodgers could not have possessed and possibly ordered the merchandise which was found in his apartment.
 
 C.
 
 41
 Defendant also argues that the district court abused its discretion in imposing upon him restitution in the amount of $2,970.81. In the presentence investigation report, the probation officer determined that $5,941.63 was owed to PC Connections for the value of merchandise which had not been recovered. The district court ordered defendant to pay one-half of this amount as restitution, which comes to $2,970.81.
 
 In his brief, defendant asserts:
 
 42
 Ordinarily, an equal division of responsibility for restitution would be appropriate. Thus far, in this case, only two defendants (ie [sic] Mills and Appellant, Weber) have been charged to date. However, it is clear that a third individual, David Rodgers, was involved and may be charged later.... Therefore, in all fairness Appellant should be required to repay one-third of the loss owed P.C. Connections, which totals $1,980.54 as opposed to $2,970.81.
 
 
 43
 Appellant's Brief at 7-8.
 
 
 44
 At the outset, it should be noted that defendant Weber is not challenging the district court's finding as to the amount of loss, nor does defendant argue that he is financially incapable of making restitution. Rather, the only issue is the amount of restitution imposed by the district court, $2,970.81, as opposed to the amount of restitution which the defendant asserts is fair, $1,980.54.
 
 
 45
 The Victim and Witness Protection Act ("VWPA"), 18 U.S.C. Secs. 3663-64, "does not dictate how restitution liability should be apportioned among multiple defendants"; however, "a sentencing court has wide discretion to fashion an appropriate sentence for an individual defendant." United States v. Harris, 7 F.3d 1537, 1540 (10th Cir.1993); see also United States v. Anglian, 784 F.2d 765, 768 (6th Cir.) ("A restitution order is in the nature of a sentence, and the district court is 'vested with wide discretion' in determining the appropriate sentence for a convicted defendant.") (quoting Williams v. Illinois, 399 U.S. 235, 243 (1970)), cert. denied, 479 U.S. 841 (1986). Codefendants need not receive identical sentences under the VWPA and "some disparity in restitution orders [among codefendants] is inevitable.' " Harris, 7 F.3d at 1540 (quoting Anglian, 784 F.2d at 768).
 
 
 46
 The VWPA does not list relative degree of responsibility as a factor for consideration; however, the statute permits the court to consider other factors which the court deems appropriate. Anglian, 784 F.2d at 768. Hence, this court has held that although relative culpability is not a necessary factor which the district court must consider in imposing a restitution order, it is proper for a district court to consider relative responsibility along with the other factors listed in the VWPA in making its restitution order. Id.; see also Harris, 7 F.3d at 1541 ("[T]he district court did not abuse its discretion in holding Defendant potentially liable for the entire amount of restitution. In fashioning an appropriate restitution order, the record indicates the court considered Defendant's role and culpability in the commission of the crime as well as his financial ability to make restitution to the victims. Because a sentencing court may properly consider relative culpability among defendants in fashioning a restitution order, see Anglian, 784 F.2d at 786, we find no abuse of discretion.").
 
 In its judgment the district court stated:
 
 47
 The Defendant's final objection is to the probation officer's conclusion that the Defendant was the most culpable individual in the offense resulting in his conviction. The basis for the Defendant's objection is that he was recruited by Noel Mills to obtain credit card numbers. The Defendant suggests that Noel Mills was the instigator of the offense and that the Defendant merely acted at Mills' direction.
 
 
 48
 The Court finds that the probation officer properly concluded that the Defendant was the most culpable individual in the offense. The Court restates that without the Defendant's illegally obtaining the credit card numbers, none of the other individuals involved in the offense could have committed their illegal acts.
 
 
 49
 J.A. 16.
 
 
 50
 Accordingly, because the district court concluded that defendant Weber was the most culpable of the individuals involved in the scheme to defraud since none of the other individuals could have committed any illegal acts in the absence of the stolen credit card numbers provided by defendant, the district court did not abuse its discretion in requiring defendant to pay restitution to the victim, PC Connections, in an amount equal to one-half of the victim's loss.
 
 III.
 
 51
 For the reasons stated, the district court's judgment, including the sentence imposed thereon, is AFFIRMED.
 
 
 
 *
 Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 In the record the surname has been spelled both Rodgers and Rogers