69 F.3d 538
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Aaron B. ROBINSON, Jr., Defendant-Appellant.
 Nos. 94-6252, 94-6253.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1995.
 
 Before: MILBURN and SILER, Circuit Judges; COOK, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Aaron B. Robinson, Jr., appeals his sentence following a guilty plea to bank fraud and failure to appear. He contends that the sentence imposed was a result of the district court's incorrect application of the sentencing guidelines and that the district court failed to make sufficient findings in its calculations of his offense level. For the reasons stated herein, we affirm the sentence.
 
 I.
 A. Procedural Background:
 
 2
 In December 1993, Robinson was indicted for making a false statement to a federally insured financial institution in violation of 18 U.S.C. Sec. 1014 (Count 1); bank fraud in violation of 18 U.S.C. Sec. 1344 (Counts 2-4); and bankruptcy fraud in violation of 18 U.S.C. Sec. 152 (Count 5).
 
 
 3
 On February 18, 1994, Robinson appeared before the district court and pursuant to a written plea agreement entered a guilty plea to one count of bank fraud (Count 4). The remaining counts were to be dismissed at sentencing upon motion of the government. The sentencing was set for May 20, 1994.
 
 
 4
 On May 20, 1994, Robinson moved to withdraw his guilty plea. This motion was granted and the case was set for trial on May 25, 1994. On May 25, 1994, Robinson failed to appear for trial and a bench warrant was issued for his arrest. He subsequently was indicted for failure to appear in violation of 18 U.S.C. Sec. 3146 and was arrested. On July 8, 1994, pursuant to a written plea agreement, Robinson entered a guilty plea to one count of bank fraud and failure to appear. Robinson's offense level was calculated to be 16 with a criminal history category of I. He was sentenced to 27 months (21 months for bank fraud and 6 months for failure to appear, consecutively).
 
 B. Factual Background:
 
 5
 On June 26, 1992, Robinson falsely overstated his income to be $225,000, on a personal financial statement he signed in connection with his application for a $10,000 unsecured loan at the National Bank of Commerce (NBC). This loan was approved and Robinson deposited the loan proceeds into his account at NBC.
 
 
 6
 On August 31, 1992, Robinson deposited a $1200 check drawn on a Shearson, Lehman Brothers (Shearson) account to his NBC account and got a cashier's check for $1158.11. On September 1, 1992, Robinson deposited a $10,227.97 check drawn on the same Shearson account to his NBC account and got a cashier's check made payable to Union Planters Bank for the same amount. He used this cashier's check to retire the debt owed on his 1990 Cadillac. Both Shearson checks were later returned to NBC marked "insufficient funds" and "account closed" with instructions not to redeposit them. The account on which the checks were written had been closed. The account had only contained $876 in stocks.
 
 
 7
 During the same time period, Robinson tried to borrow an additional $50,000 from NBC to consolidate with the earlier $10,000 unsecured loan for a total balance of $60,000. In support of his request, Robinson presented NBC with a letter dated August 31, 1992, from G. Donald Harrison, an alleged Merrill Lynch representative, stating that Merrill Lynch would set up an account to secure the $60,000 loan. Robinson was advised that NBC would not make the loan without possession of the collateral. Later, Robinson took NBC a second letter dated September 2, 1992, from Merrill Lynch that basically restated the contents of the first. NBC again informed him that no loan would be granted without the collateral. NBC later learned that there was no G. Donald Harrison in the employ of Merrill Lynch and that Robinson did not have any accounts with them at that time.
 
 
 8
 Upon learning of Robinson's fraudulent conduct, NBC initiated civil proceedings to recover its losses. Robinson then filed for bankruptcy under Chapter 13 to stay the proceedings. In his filing documents, Robinson reported owning a Steinway grand piano in which he had an interest of $2,000. His actual interest was $25,000.
 
 
 9
 NBC filed adversary proceedings in bankruptcy court and was awarded the Cadillac. However, Robinson refused to relinquish title to the car and subsequently sold it. NBC did not receive any of the proceeds from this sale. During the proceedings Robinson had agreed to surrender the Steinway grand piano to NBC for a credit of $25,000 with the remaining $5433.97 to be made in installments. However, Robinson failed to surrender the piano or to make any form of restitution.
 
 II.
 
 10
 "[W]e review de novo a sentencing court's interpretation of the guidelines, but we must uphold a sentencing court's factual findings unless they are clearly erroneous.... Furthermore, those factual findings need not be based upon proof beyond a reasonable doubt, but need only be supported by a preponderance of the evidence." United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993) (citations omitted).
 
 A. The base offense level:
 
 11
 Robinson contends that he should have received a base offense level of three pursuant to Sec. 2X1.1 (Attempt, Solicitation or Conspiracy) instead of a base offense level of six pursuant to Sec. 2F1.1 (Fraud and Deceit). In support of his contention, Robinson argues that he only delivered two letters to NBC in an attempt to "feel" them out regarding the possibility of a loan. This argument is unpersuasive.
 
 
 12
 The base offense level for bank fraud is six. USSG Sec. 2F1.1(a). "Offense characteristics are added to the base level depending on the amount of the loss incurred by the victim." United States v. Blackburn, 9 F.3d 353, 358 (5th Cir.1993), cert. denied, 115 S.Ct. 102 (1994). However, pursuant to Sec. 2X1.1(b)(1) the base offense level is reduced three levels if the defendant's conduct only constituted an attempt. But Sec. 2X1.1(b)(1) also provides that the offense level need not be reduced if
 
 
 13
 the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.
 
 
 14
 The appropriate treatment for a partially completed offense for which a reduction will be warranted turns on the particular facts of each individual case. Here, Robinson easily obtained the $10,000 signature loan with no supporting documentation. Then, he obtained the two cashier's checks with equal ease. When he attempted to obtain the additional $50,000, he clearly had reason to believe that the fraudulent letter would be sufficient and that he had completed all acts necessary to obtain the money. Even after being advised that the bank would need actual possession of the collateral, Robinson presented yet another fraudulent letter which he obviously thought would be sufficient to obtain the money. Additionally, an official with NBC testified that Robinson had done everything necessary to get the money. NBC then decided not to give it to him without actual possession of the collateral. Thus, but for the bank's unexpected refusal (which was beyond his control), Robinson had completed all such acts he believed necessary for the successful completion of the substantive offense. He is not entitled to the reduction under Sec. 2X1.1. The court's finding was not clearly erroneous.
 
 B. Intended loss:
 
 15
 Robinson's base offense level was increased by six under Sec. 2F1.1(b)(1)(g) which provides if the loss exceeds $70,000 but is less than $120,000, then a six-level increase is appropriate. The district court found the actual loss was $30,422.97. Robinson's attempt to secure the additional $50,000 was included pursuant to Sec. 2F1.1. The understatement of the value of the piano by approximately $23,000 in the bankruptcy statement was included as intended loss, resulting in a total loss of $103,422.97.
 
 
 16
 "[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Watkins, 994 F.2d at 1195. However, before an amount of loss is relevant: "the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for interruption, all of the acts necessary to bring about the loss." Id. at 1196.
 
 
 17
 The district court properly rejected Robinson's claim that he intended to use part of the $60,000 loan to repay NBC for the other fraudulent conduct as it is unsubstantiated. Further, this claim is without merit regardless since "[f]or sentencing purposes, it is enough to recognize that [Robinson] put [the bank] at risk for the full amount." United States v. Brach, 942 F.2d 141, 143 (2d Cir.1991).
 
 
 18
 Robinson undervalued his piano in the bankruptcy action by $23,000. The district court found an intended loss of $23,000 as the purpose of the undervaluation was to hide the asset from his creditors. This finding was erroneous. There was no actual loss in connection with the undervaluation. Nor is there sufficient evidence of an intended loss. However, it was harmless error as it does not affect the offense level. The correct total loss amount of $80,422.97 is still within the $70,000 to $120,000 range which requires a six-level increase.
 
 C. Minimal Planning:
 
 19
 Robinson's offense level was increased by two points pursuant to Sec. 2F1.1(b)(2) for more than minimal planning. Note 1(f) of the Commentary to Sec. 1B1.1 states, " 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." "[F]raudulent loans in any substantial amount seldom result from minimal planning." Brach, 942 F.2d at 145. Accord United States v. Fox, 889 F.2d 357, 361 (1st Cir.1989) ("We cannot conceive of how obtaining even one fraudulent loan would not require more than minimal planning.").
 
 
 20
 Robinson went to NBC on June 26, 1992, for the express purpose of obtaining a loan. He intentionally misstated his income. On two separate occasions, he deposited checks knowing there was insufficient funds with which to back them up and obtained cashier's checks. He admittedly patterned two fraudulent letters of credit using old letters and false information in his attempt to obtain the additional $50,000 loan. The district court's finding of more than minimal planning was not clearly erroneous.
 
 D. Acceptance of Responsibility:
 
 21
 The district court refused to grant Robinson a two-point downward adjustment for acceptance of responsibility. To be entitled to this reduction, a defendant must "clearly demonstrate" such acceptance of responsibility. Watkins, 994 F.2d at 1196. True remorse for the specific criminal behavior is the issue, not consideration of unrelated criminal conduct. United States v. Morrison, 983 F.2d 730, 735 (6th Cir.1993).
 
 
 22
 Robinson entered a guilty plea, withdrew this plea, and then failed to appear at the scheduled sentencing. The Commentary to Sec. 3E1.1 specifically provides that "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" is an appropriate consideration. Further, other circuits have likewise affirmed a district court's denial of a two-point reduction for acceptance of responsibility when the defendant has failed to appear. See United States v. Lechuga, 975 F.2d 397 (7th Cir.1992), and United States v. Wichmann, 958 F.2d 240 (8th Cir.1992).
 
 
 23
 The district court's denial of the two-point reduction was not clearly erroneous.
 
 E. Obstruction of Justice:
 
 24
 The district court imposed a two-point increase for obstruction of justice pursuant to Sec. 3C1.1. Application Note 3(e) in the Commentary section of Sec. 3C1.1 specifically lists "willfully failing to appear, as ordered, for a judicial proceeding," as an example of the type of conduct to which this enhancement applies. Given Robinson's conduct, this determination was not clearly erroneous.
 
 III.
 
 25
 Finally, Robinson contends that the district court made insufficient findings when it calculated his offense level. This contention is without merit.
 
 
 26
 The district court adopted the presentence report and the addendum thereto as its findings of fact and law. Thus, this court must examine these documents to determine if "sufficient findings are made on the record to support the sentence." United States v. Wilson, 920 F.2d 1290, 1295 (6th Cir.1990).
 
 
 27
 An examination of the presentence report and the addendum thereto (which specifically addressed each of Robinson's objections) reveals that they were quite extensive and precise. "Sufficient factual findings exist in the report to support [the district court's] determination." Id.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Julian A. Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation