94 F.3d 645
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Timothy E. MEHLMAN, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 95-4192.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1996.
 
 Before: BROWN, MARTIN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 In April 1995, defendant Mehlman pleaded guilty, pursuant to a plea agreement, to mail fraud and tax evasion, in violation of 18 U.S.C. § 1341 and 26 U.S.C. § 7201. Both charges arose from a Ponzi scheme that Mehlman originated. At sentencing, the district court found that Mehlman had defrauded his victims of over $600,000. (JA at 215.) This number came from the Presentence Investigation Report (PSI). It resulted in a ten-level enhancement under USSG § 2F1.1(b)(1)(K). The court calculated this number by crediting the PSI's statement that $1,968,157 had been invested and that $1,323,092 had been returned to investors through the Ponzi scheme.
 
 
 2
 We must uphold a district court's factual findings underlying an application of the Sentencing Guidelines unless they are clearly erroneous. United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993). At sentencing, the prosecution bears the burden of proving by a preponderance of the evidence the loss attributable to the fraudulent scheme. Ibid.
 
 
 3
 Mehlman makes two arguments on appeal, only one of which was raised below. Because Mehlman believes that he should be sentenced on his intended loss, he argues that the district court failed to deduct the "legitimate" business expenses associated with running the Ponzi scheme, thus potentially reducing the intended loss, when it calculated the total loss to the investors. In terms of USSG § 2F1.1, comment (n. 7(b)), this argument can be restated as: the "intended loss" was less than the "actual loss" and thus should be used as the appropriate measure of the "amount of loss." However, in making this argument, Mehlman conceded that if there were no deduction for allegedly legitimate business expenses, the correct loss would be over $600,000. This effectively destroys his second argument, as we explain below.
 
 
 4
 Mehlman now makes the new argument that the PSI does not contain sufficient evidence to establish $600,000 or more as the appropriate measure of loss. Specifically, Mehlman argues that there is not a case-by-case breakdown of "investors' " losses in the scheme that can be summed to arrive at the total loss incurred.
 
 
 5
 Turning to the actual versus intended loss distinction, we see that Application Note 7(b) of § 2F1.1 states, "... if an intended loss can be determined this figure will be used if it is greater than the actual loss." (emphasis added). If the actual loss is greater than the intended loss (or if the intended loss cannot be determined), the plain language of this application note tells courts to use the actual loss. Stinson v. United States, 508 U.S. 36, 42-47 (1993) (holding that the Guidelines commentary is binding on the courts unless certain exceptions, not relevant here, apply). This court has recently addressed precisely this issue. "If Wolfe's statements that he never intended for anyone to lose money in his program are believed, and the district court did not specifically find that Wolfe lacked credibility on this point, then Wolfe intended lower total losses to investors than actually occurred. Hence, actual loss is the appropriate measure of this crime." United States v. Wolfe, 71 F.3d 611, 617 (6th Cir.1995). Here, just the opposite occurred. The district court discredited Mr. Mehlman's testimony that the intended loss was less than the actual loss. All of Mehlman's arguments about valid business expenses are an effort to show that the gain to himself, and hence the intended loss, was less than the actual loss. As such, they are quite simply irrelevant.
 
 
 6
 Mehlman's new argument on appeal that Watkins requires the district court to look at more than the evidence that is provided in the PSI is similarly misplaced, especially because it was not raised below. Even had Mehlman raised this argument below, we are not sure it would have made a difference. In Watkins, this court dealt with a check kiting scheme where the defendant objected to being sentenced on the face value of the checks (some $40,000) she kited, as opposed to the $13,000 she managed to withdraw from banks to which she presented the kited checks. Specifically, the Watkins court wanted to know how much money the defendant intended to get out of her scheme. Watkins held that in no case could the amount of loss fall below the actual loss of $13,000 as a result. The court remanded the case to the district court to make more specific findings than were contained in the PSI because the court was concerned about Watkins's intent--"... the extent to which Watkins completed her schemes and the events that prevented her from bringing her schemes to fruition ... [and] the extent to which Watkins was capable of causing the full [face value] amount of the loss...." Watkins, 994 F.2d at 1196. It needed this information to calculate the intended loss. In Mehlman's case, we are not concerned with the intended loss; we are concerned with the actual loss and do not require more evidence than is contained in the PSI and Mehlman's admission that over $600,000 in actual loss is appropriate.
 
 
 7
 Moreover, the PSI contains a detailed breakdown of the losses to four of the 81 investors. It stands to reason that the probation officer thought a case-by-case breakdown in relation to all investors would be unnecessary, but apparently had the details to back up a demand such as Mehlman's for more supporting information had it been made at sentencing.
 
 
 8
 Since there is evidence in the record that the investors put nearly $2 million into the Ponzi scheme and evidence that only $1.3 million was returned to them, we cannot say that it was clear error for the district court to conclude that approximately $600,000 was the appropriate measure of the actual loss.
 
 
 9
 For the above reasons we AFFIRM the district court's sentence.