**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0739n.06

**No. 08-6080**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Nov 16, 2009** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| KATRINA NEWSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE and COOK, Circuit Judges; LUDINGTON, District Judge.[*]

LUDINGTON, District Judge. Defendant Katrina Newson entered a guilty plea to one count of fraud in connection with identification documents, 18 U.S.C. § 1028(a)(7), on June 16, 2008. Pursuant to a Rule 11 plea agreement, the government agreed to dismiss two additional identity fraud counts and three counts of fraudulent use of a social security number, 42 U.S.C. § 408(a)(8). On August 29, 2008, the district court sentenced Newson to thirty months in prison followed by three years of supervised release.

On appeal, Newson contends that the sentencing court erred in calculating the "pecuniary harm that was intended to result from the offense" pursuant to the United States Sentencing Guidelines Manual, 2B1.1, cmt. n.3(A)(ii), and imposed an "unreasonable" sentence within the

---

[*]The Honorable Thomas Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

meaning of *United States v. Booker*, 543 U.S. 220 (2005). Because the sentencing court did not develop a factual record as to whether Newson intended to cause more than $40,000 in loss, and the actual loss amounted to less than $9,000, Newson's sentence will be vacated and the case will be remanded to the district court for a new sentencing hearing.

Using the name "Katrina Wurshen" and a social security number belonging to Audra Wurshen, Newson completed two separate credit applications in an attempt to purchase automobiles on December 17, 2007 and on January 17, 2008, respectively. Her first attempt failed after a salesman at Gossett Motors became suspicious and contacted the real Audra Wurshen. The record is unclear as to why Newson did not complete the second purchase. Newson apparently left Bud Davis Cadillac after submitting a completed credit application and did not return. *See* Presentence Rep. ¶ 7. At various times during December 2007 and January 2008, Newson also used Wurshen's information to access existing credit accounts or start new ones at several retail stores, making additional purchases totaling more than $8,000. A grand jury returned a six-count indictment against the defendant on February 26, 2008. Pursuant to the plea agreement, the court dismissed all but one count of identity fraud.

A probation officer prepared a presentence report, which calculated the total intended loss at $44,600.03. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) & cmt. n.3(A) (2007). The Sentencing Guidelines called for enhancements based on the greater of the "actual loss" or the "intended loss" if the total loss exceeded $5,000. *Id.* Intended loss means "pecuniary harm that was intended to result from the offense" even if it "would have been impossible or unlikely to occur." *Id.* at cmt. n.3(A)(ii). The presentence report's total included $10,900 for the first car, which was

a 2004 Lexus ES 330 valued at $24,450. The calculation was arrived at by subtracting $13,550, the value of a 2005 Mitsubishi Newson offered as a trade, from the total value of the Lexus. The intended loss for the second car, a 2005 Lexus ES 330, was calculated to be $25,000, its retail value. The fraudulent retail purchases amounted to $8,700.03.

The sentencing judge adopted the intended loss calculations from the presentence report, over the defendant's objections, and applied a six-level enhancement in accordance with § 2B1.1(b)(1)(D) of the Guidelines. Newson's total offense level was thirteen, based on a base-level of seven, § 2B1.1(a)(1), adding six levels for the intended loss enhancement, § 2B1.1(b)(1)(D), adding two levels for "unauthorized . . . use of any means of identification unlawfully to . . . obtain any other means of identification," § 2B1.1(b)(10)(C)(i), and a two-level reduction for acceptance of responsibility, § 3E1.1. Combined with a criminal history score of eight points, the Guidelines recommended a sentence of between twenty-four and thirty months. The sentencing judge, after considering the 18 U.S.C. § 3553 factors, sentenced Newson to thirty months in prison.

The first issue raised on appeal is whether the district court erred by including the value of the second automobile in its intended loss calculation. Newson contends that submitting the credit application without taking "further steps in completing the purchase" does not constitute sufficient evidence that she "subjectively intended to inflict [the loss] on the victim." *See United States v. Moored*, 38 F.3d 1419, 1427 (6th Cir. 1994).

The factual findings of the sentencing court are reviewed for clear error. *United States v. Garner*, 940 F.2d 172, 174 (6th Cir. 1991). Application of those facts, however, "to a particular

guideline provision is purely a legal question and is reviewed *de novo* by this court." *Id.* Loss

calculations pursuant to § 2B1.1(b)(1) are findings of fact and will only be overturned if they are

clearly erroneous. *See United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998).

The government bears the burden of proving intended loss by a preponderance of the

evidence. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006) (citing *United States v.*

*Davidson*, 409 F.3d 304, 310 (6th Cir. 2005); *United States v. Rothwell*, 387 F.3d 579, 582 (6th Cir.

2004)). "When any factor important to the sentencing determination is reasonably in dispute, the

parties shall be given an adequate opportunity to present information to the court regarding that

factor." U.S. Sentencing Guidelines Manual § 6A1.3. "[I]f there is any allegation of a factual

inaccuracy [in the presentence report], the court must make a written factual finding or a

determination that such a finding is not necessary. If a district court fails to make a factual finding,

this court must remand for resentencing." *United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir.

1990) (citing *United States v. Manni*, 810 F.2d 80, 83 (6th Cir. 1987)).

"[I]ntended loss [is] the loss the defendant subjectively intended to inflict on the victim . . . ."

*Moored*, 38 F.3d at 1427. To be included in the intended loss calculation, the defendant also "must

have completed or been about to complete but for interruption, all of the acts necessary to bring

about the loss." *United States v. Watkins*, 994 F.2d 1192, 1196 (6th Cir. 1993).[1]

---

[1] *Watkins* employed a three part test: the defendant must have intended the loss; the defendant must have completed the loss, or been about to complete it but for interruption; and "it must have been possible for the defendant to cause the loss." 994 F.2d at 1196. However, the third prong was later superseded by amendments to application note 3(A)(ii) to § 2B1.1 of the Sentencing Guidelines. *See United States v. Younes*, 194 F. App'x 302, 316 (6th Cir. 2006).

Here, it is not clear from the record that the defendant was "about to complete but for interruption" the purchase of the second automobile. *Id.* The defendant contends in her brief that she "did complete a credit application at the car dealership, but she subsequently abandoned her attempt at purchasing the automobile when she failed to complete any further paperwork or attempt to take possession of the car." Def.'s Br. at 12. Perhaps more importantly, she also offered to prove at the sentencing hearing that she was offered possession of the vehicle by the dealership's staff on the day she completed the credit application, and refused it. The trial court rejected her offer of proof.

> **The Court:** Well, the loss then becomes the amount that you sought to obtain the credit for. And there might be some circumstances . . . where it was not sufficient to result in inclusion of it as a loss. [But i]t's the intended loss, it's not what you actually received. I think it's clearly supported in the record. The fact that an effort fails or the person becomes very nervous and decides not to pursue it further, whatever happens, we don't know.
>
> **[Defendant's Counsel]:** I think in this case the car was offered to her to take home, and she declined that.
>
> **The Court:** Right.
>
> **[Defendant's Counsel]:** Those are the facts.
>
> **The Court:** I'm not sure I have got that.
>
> **[Defendant's Counsel]:** It is not in the presentence report, but I think in talking to Ms. Newsom [sic], and actually I think perhaps it would be helpful to hear the facts from Ms. Newsom [sic] concerning that transaction.
>
> **The Court:** Do we have a report?
>
> **The Probation Officer:** No, Your Honor, that wasn't in the investigative file.
>
> **The Court:** Not in the investigative file. It is kind of hard to assess information that's not in the investigative file, it is very hard to assess that. It appears in the case based on the undisputed record as established by the presentence report that this is properly calculated. That was part of the intended loss, and it should be reflected in the loss calculation. If there's nothing else on that, let's go ahead because I know we have got a few other things to accomplish today.

**[Defendant's Counsel]:** The court has ruled, you know my position.

Tr. of Sentencing Hr'g at 23–24.

It was clear error for the district court to ignore the defendant's offer of proof. If in fact Newson was offered the vehicle, but refused it with the intention of abandoning her scheme, the value of the vehicle should not have been included in the intended loss calculation because she did not "subjectively intend" to cause the loss. *Moored*, 38 F.3d at 1427. Nor was she "about to complete but for interruption, *all* of the acts necessary to bring about the loss." *Watkins*, 994 F.2d at 1196 (emphasis added). If the value of the second automobile had not been included in the intended loss calculation, the enhancement would have been four levels instead of six, and the recommended sentence would have been no longer than twenty-seven months.[2]

If the defendant accepted the car, or some outside force beyond her control interrupted the transaction before it was completed, it would be appropriate to infer that she had subjectively intended to cause the loss. *See Moored*, 38 F.3d at 1427; *cf. United States v. Cunningham*, 191 F.3d 453 (6th Cir. 1999) (table) (affirming economic loss calculations in a fraudulent loan scheme based in part on a fraud that was discovered and interrupted by a suspicious bank manager after all the steps had been completed to process the loan, but before the loan proceeds were actually paid). If, on the other hand, Newson simply abandoned the scheme before she completed the fraudulent

---

[2]Although removing the value of the second vehicle from the intended loss assessment reduces the loss enhancement by two levels, it would only reduce the defendant's overall Guideline calculation by one level because the application of the enhancement for "unauthorized . . . use of any means of identification unlawfully to . . . obtain any other means of identification" recommends a minimum offense level of twelve. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(10)(C)(i).

purchase, the value of the vehicle should not be included in the intended loss calculation. *Watkins*, 994 F.2d at 1196. It is impossible to determine from the facts on the record why the defendant did not complete the purchase of the second vehicle, leaving unresolved the issue of whether she "subjectively intended to inflict on the victim" a loss equal to the value of that vehicle. *Moored*, 38 F.3d at 1427.

Because the trial judge rejected the offer of proof that Newson voluntarily abandoned the transaction before it was completed, Newson's sentence is vacated and the case is remanded to the district court for a new sentencing hearing. *See Edgecomb*, 910 F.2d at 1313. Under these circumstances we need not consider Newson's second argument regarding the reasonableness of the sentence under *Booker*.