IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10442
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIE ANTOINETTE OATES,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Northern District of Texas
_____
September 4, 1997

Before GARWOOD, DEMOSS and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Marie Antoinette Oates (Oates), convicted of bank fraud pursuant to her guilty plea, was sentenced to 15 months' imprisonment with 5 years' supervised release, assessed $100, and ordered to make restitution in the amount of $9500. Oates appeals the term of her imprisonment. We affirm.

## Facts and Proceedings Below

This appeal involves a singularly offensive crime. In the summer of 1996, Oates, a 25-year-old resident of Amarillo, Texas, was hired to serve as "companion" to Margaret E. Mills, an 86-year-old female suffering from Alzheimer's Disease. Mills, fortunate

enough to enjoy the continued support of her son Robert, nevertheless fell victim to what can only be described as the unadulterated cruelty of the very woman employed to care for her in the autumn of her life. Oates, whose conception of succor apparently included stealing money from those most vulnerable in our society, was arrested after attempting to negotiate a $50,000 time deposit agreement (certificate of deposit) in Mills' name. On three prior occasions, Oates had made unauthorized withdrawals from accounts in Mills' name totaling $9500.

The facts are no less disconcerting when couched in the language of the factual resume to which Oates agreed under oath when her guilty plea was accepted:

> "On three separate occasions, the defendant fraudulently obtained funds from Margaret Mills' . . . by preparing an account debit, presenting the debit ticket to the teller and receiving the drawn funds. The defendant withdrew funds in the same manner on September 9, 1996 in the amount of $4,000.00, on September 16, 1996 and received $2,500.00 and on September 18, 1996 and received $3,000.00.
> On October 30, 1996, the defendant went to Boatmen's First National Bank and attempted to negotiate a $50,000.00 Time Deposit Agreement that had been issued to Margaret E. Mills or Rob O. Mills. The police posed as bank employees and apprehended the defendant after she signed the $50,000.00 negotiable instrument (time deposit agreement)."

Oates was indicted by a federal grand jury on November 26, 1996, for violating 18 U.S.C. § 1344, the federal bank fraud statute. On February 10, 1997, Oates pleaded guilty to the one-count indictment before the United States District Court for the

2

Northern District of Texas, Amarillo Division.[1]   Following

---

[1]     The indictment reads as follows:

"<u>INTRODUCTION</u>

1.    At all times material to this indictment First Bank Southwest, Amarillo, Texas (hereinafter 'FBS') and Boatmen's First National Bank, Amarillo, Texas (hereinafter 'BFNB') were financial institutions with deposits insured by the Federal Deposit Insurance Corporation.

2.   Beginning on or about September 9, 1996 and continuing to on or about October 30, 1996 in the Amarillo Division of the Northern District of Texas and elsewhere the defendant, MARIE ANTOINETTE OATES, devised and intended to devise a scheme and artifice to defraud and to obtain money and funds owned by and under the custody and control of FBS and BFNB by means of false and fraudulent pretenses, representations, and promises, well knowing at the time that the pretenses, representations, and promises would be and were false when made; the scheme and artifice so devised and intended to be devised being in substance as follows:

3.    It was part of the said scheme and artifice to defraud that:

a.    Defendant MARIE ANTOINETTE OATES was employed as a companion for Margaret E. Mills.

b.    Defendant MARIE ANTOINETTE OATES, in her position as a companion to Margaret E. Mills, had access to various personal records and documents of Ms. Mills.

c.    Defendant MARIE ANTOINETTE OATES, on three separate occasions, fraudulently obtained funds from Margaret E. Mills' Checking Account Number 601118041 held at FBS, Amarillo, Texas, by preparing an account debit, presenting an FBS teller with the debit, and receiving the withdrawn funds.  The withdrawals totaled $9,500.000.

d.   On or about October 30, 1996, Defendant MARIE ANTOINETTE OATES attempted to negotiate a $50,000 Time Deposit Agreement issued by BFNB to Margaret E. Mills or Rob O. Mills by presenting such to a BFNB employee.

<u>COUNT 1</u>

1.    The Grand Jury realleges all of the allegations contained in the Introduction of the Indictment as if fully set forth herein.

2.    On or about September and October, 1996, in the Amarillo Division of the Northern District of Texas, defendant, MARIE ANTOINETTE OATES, knowingly executed and attempted to execute the scheme and artifice to defraud and to obtain money and funds by means of false and fraudulent pretenses, representations and promises, in that the Defendant attempted to negotiate at Boatmen's First National Bank, Amarillo, Texas a $50,000.000 Time Deposit Agreement issued to Margaret E. Mills or Rob O. Mills; and the Defendant caused funds to be withdrawn from the Checking Account of

preparation of her presentencing investigation report, the district court sentenced Oates on April 14, 1997.

Oates objected to the presentence investigation report's determination that the relevant loss for the purposes of calculating a base offense level—$59,500—improperly included the full face amount of the time deposit agreement, as Oates had yet to present the endorsed instrument to the bank's teller. Accordingly, Oates argued that her intent to obtain by fraud the entire $50,000 had not been determined by a preponderance of the evidence and that her offense level should therefore reflect only the amount she had successfully obtained—$9500. Alternatively, Oates argued that she should, in any event, be entitled to a three-level decrease in her offense level if the full $50,000 was included in the relevant loss amount under a section of the sentencing guidelines addressing attempts.

The district court rejected Oates' argument, and sentenced her using a base offense level reflecting a loss of $59,500 without a downward reduction. Oates appeals her sentence. We affirm.

---

Margaret E. Mills at First Bank Southwest, Amarillo, Texas, on at least three separate occasions withe the total amount paid by FBS to the Defendant exceeding $9,500.00, as described and set out below:

| DATE | BANK | AMOUNT |
|------|------|--------|
| 09/09/96 | FBS | $ 4,000.00 |
| 09/16/96 | FBS | 2,500.00 |
| 09/18/96 | FBS | 3,000.00 |
| 10/30/96 | BFNB | 50,000.00 |

All in violation of Title 18, United States Code, Section 1344."

**Discussion**

On appeal, Oates makes essentially the same arguments as she presented to the district court. Although acknowledging that the district court was entitled to consider the face amount of the time deposit agreement as a loss under U.S.S.G. § 2F1.1(b)(1)(F), Oates contends that any increase in her base offense level as a result of her indorsement of the time deposit agreement must be concomitantly offset by the three-level reduction provided for by U.S.S.G. § 2X1.1(b)(1), the attempt, solicitation, and conspiracy provision, because she had not consummated the fraudulent transaction at the time of her arrest. The government contends that Oates had completed all steps necessary to convert the time deposit agreement and that the bank fraud offense was therefore completed, making the attempt guideline inapplicable.

Oates was convicted of violating the federal bank fraud statute, which provides, in pertinent part:

> "Whoever knowingly executes, or attempts to execute, a scheme or artifice——
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." 18 U.S.C. § 1344 (West Supp. 1997).

The applicable sentencing guideline for section 1344 offenses, U.S.S.G. § 2F1.1, provides for a base offense level of six. For losses exceeding $2000, the guideline calls for progressive increases in the offense level using incremental loss amounts. For

5

a loss of more than $40,000 (but less than $70,000), the guideline calls for an increase of five levels.  For a loss of more than $5000 (but less than $10,000), the guideline calls for an increase of two levels.  U.S.S.G. § 2F1.1(b)(1)(C) & (F).  The district court concluded that a five-level increase was merited in light of the loss amount, which included both the $9500 in successfully absconded funds and the $50,000 face amount of the fraudulently endorsed negotiable instrument.[2]

Oates' contention that there was no evidence to support a finding that she intended to withdraw the entire actual monetary amount represented by the endorsed time deposit agreement gives us reason to address, once again, the proper determination of loss under section 1344 of the federal bank fraud statute.[3]  "We review a district court's loss determination under the clearly erroneous standard; as long as the finding is plausible in light of the record as a whole, it is not clearly erroneous."  *United States v. Sowels*, 998 F.2d 249, 251 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1076 (1994).

---

[2]    The district court applied both a two-level increase pursuant to U.S.S.G. § 2F1.1(b)(2) for "more than minimal planning" and an additional two-level increase pursuant to U.S.S.G. § 3A1.1(b) because Oates "knew or should have known that [Mills] was unusually vulnerable due to age, physical or mental condition, or that [Mills] was otherwise particularly susceptible to the criminal conduct."  Oates appeals neither such increase.

[3]    Oates acknowledges on brief that "while the trial court was entitled to determine, under U.S.S.G. § 2[F]1.1, that Oates attempted a theft of some portion of the $50,000 certificate of deposit, it erred in denying Oates a three-point reduction in offense level under U.S.S.G. § 2X1.1 for what was clearly an attempt."

This Court has long adhered to the view, supported by the relevant application note, that the amount of loss for the purpose of determining a base offense level in U.S.S.G. § 2F1.1(b)(1) is the dollar amount placed at risk by a defendant's fraudulent scheme or artifice. *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993) ("Where a defendant attempts to pass altered or forged checks, the face value of the checks reflects the intended loss, even if the money is recovered or returned"); *Sowels*, 998 F.2d at 251 (using credit limit of stolen credit cards to determine loss amount under U.S.S.G. § 2B1.1(b)(1)(theft)); *United States v. Wimbish*, 980 F.2d 312, 315-16 (5th Cir. 1992) (rejecting check forger's contention that, under U.S.S.G. § 2F1.1(b)(1), "the face value of the checks is neither the probable nor the intended loss, but merely a possible loss" and stating that "Wimbish put the victims at risk for the full loss, despite the subsequent recovery of the amount Wimbish did not receive"), *cert. denied*, 113 S.Ct. 2365 (1993); *United States v. Hooten*, 933 F.2d 293, 298 (5th Cir. 1991) (affirming, in a section 1344 appeal prior to the promulgation of U.S.S.G. § 2F1.1, the use of "the value of the potential loss to the credit union").

Of course, use of the dollar amount of funds or credit placed at risk to determine the "loss" amount under section 2F1.1(b)(1) is merely an application of Note 7, which states:

> "Consistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss. . . . For example, if the fraud consisted of . . . representing that a forged check for $40,000 was

7

genuine, the loss would be $40,000."   U.S.S.G. § 2F1.1
comment n.7.

We can see no discernible, qualitative distinction between a
fraudulently endorsed certificate of deposit and a forged check for
the purposes of measuring loss under section 2F1.1(b)(1).[4]   By
indorsing the instrument, Oates gained access to its face amount.
That Oates had yet to present the instrument for payment in full—or
because she arguably had the ability (and was not shown not to have
intended) to roll the amount over or otherwise change the form of
Ms. Mills' investment—is not determinative of the amount of the
"loss" for the purposes of section 2F1.1(b)(1).   Oates obtainment
of access to the funds represented by the time deposit agreement
placed the full amount at risk.[5]   The entire $50,000 face amount of

[4]     Oates does not challenge the characterization of the endorsed
time deposit agreement in her factual resume as a "negotiable
instrument."   Nor, for that matter, does the government challenge
Oates' implicit contention that she could have presented the
endorsed instrument to the bank for incremental redemption.

[5]     Oates' claim that, because she may have withdrawn funds in
smaller amounts over time (as she had when she fraudulently
withdrew $9500 in funds from Ms. Mills' checking account over the
course of nine days, but had not completely depleted that account,
leaving about $500 in it), her "intent" could not have been to take
the entire $50,000, is without merit.   Whether, after Oates
fraudulently gained access to funds that did not belong to her, she
had planned to milk her fraud over time through subsequent (and
equally fraudulent) "withdrawals" or had planned instead to
withdraw the money in full immediately does not alter the fact that
the entire amount of the deposit was placed at risk by her
intentional, fraudulent act.   One who fraudulently endorses a
financial instrument by definition intends to gain access to the
funds it represents.   In this context, such access to funds is
dispositive.   Fraudulent access to funds achieved by a false and
fraudulent making or endorsement of a check or certificate of
deposit represents a very real loss to both the individual victim
and the financial institution that the federal bank fraud statute
was designed to protect.   How Oates planned to utilize this
fraudulently obtained access is simply immaterial to the proper

the time deposit agreement was therefore properly considered by the district court when it determined her base offense level under U.S.S.G. § 2F1.1(b)(1).

Oates' principal argument on appeal concerns the applicability of U.S.S.G. § 2X1.1,[6] the section addressing attempt, solicitation, or conspiracy. Oates contends that, as she had not presented the endorsed time deposit agreement to the bank's teller at the time she was arrested, her actions amount to *attempted* bank fraud and she is therefore entitled to a three-level reduction for attempt. The government argues that, upon her endorsement of the time deposit agreement, Oates had completed all of the necessary steps required for bank fraud (as it pertained to the $50,000 time deposit agreement). That the police (posing as bank officers) prevented her from presenting the fraudulently endorsed instrument for payment, so the argument goes, should not entitle Oates to the reduction.

We are persuaded that the district court did not err by

---

application of section 2F1.1(b)(1) here.

[6]    U.S.S.G. § 2X1.1(b)(1) provides, in pertinent part:

> "If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete such acts but for apprehension or interruption by some similar event beyond the defendant's control."

"Substantive offense" is defined in the Application Note to mean "the offense that the defendant was convicted of soliciting, attempting, or conspiring to commit." U.S.S.G. § 2X1.1 comment n.2.

refusing Oates the benefit of a three-level reduction in her base offense level pursuant to U.S.S.G. § 2X1.1.

Oates relies on two Sixth Circuit cases that arguably support her position. The first, *United States v. Watkins*, 994 F.2d 1192, 1194 (6th Cir. 1993), involved a check kiting scheme among five separate banks. The scheme, in which the defendant deposited worthless checks into accounts opened under aliases and then proceeded to make cash withdrawals against the deposits, had been interrupted at each bank at various stages of completion. *Id.* The defendant pleaded guilty to bank fraud under section 1344 but argued, like Oates, that the amount of loss should be determined not by reference to the total amount of the worthless checks she deposited (the instruments of her fraud), but rather by the amount of cash withdrawn (or attempted to be withdrawn). *Id.* at 1195. The district court disagreed, using the full amount of the fraudulent deposits.

The Sixth Circuit held that, although the full face amount of the deposits was the relevant loss amount under U.S.S.G. § 2F1.1, it was nevertheless subject to the "limitation" provided by U.S.S.G. § 2X1.1(b)(1)—namely, whether the defendant's conduct qualified as an "attempt" using withdrawal as a prerequisite of the completed offense. The Sixth Circuit remanded for a determination as to whether the check kiter "intended to, or could have, completely drained her accounts of the funds purportedly contained therein." *Id.* at 1196.

Likewise in *United States v. Aideyan*, 11 F.3d 74 (6th Cir. 1993), the Sixth Circuit reversed a district court's determination

10

that the defendant should be held accountable for the full amount of 5 forged and stolen checks (over $40,000) when only 2 of the forged checks (under $20,000) had ever been presented for payment, the other three being found at his residence. The Sixth Circuit held that, although the full amount applied for the purposes of U.S.S.G. § 2F1.1, the defendant was nevertheless entitled to a three-level decrease under 2X1.1 because the three unpresented checks involved only an attempted offense. *Id.* at 77.

We do not find the Sixth Circuit cases persuasive here. Although, arguably, section 2X1.1 would apply to reduce the amount of loss where the requisite acts necessary to establish a completed offense had yet to be undertaken, such a view is of little help to Oates, who at the time of her arrest had performed all required acts necessary to access the face amount of the fraudulently endorsed time deposit agreement and was in a position to do so immediately.

Furthermore, we consider the Seventh Circuit's view of the relationship between sections 2F1.1 and 2X1.1 to be the more logical interpretation of the guidelines as they apply to the determination of loss amounts in this context. In *United States v. Yusufu*, 63 F.3d 505, 513-14 (7th Cir. 1995), the defendant was convicted of altering money orders and checks deposited to a mutual fund account in an amount totaling $90,000. The defendant appealed the district court's decision to include the entire $90,000 amount as a loss when, in fact, he subsequently drew only one $5000 check on the account. The defendant urged the Seventh Circuit to adopt the Sixth Circuit's *Watkins* position by recognizing a three-level

11

reduction in his base offense level due to the smaller amount he attempted to realize from his fraud. Rejecting the defendant's argument, the Seventh Circuit held that the reference to section 2X1.1 was not as a limitation on the application of section 2F1.1's loss provision:

> "Application Note 7 to § 2F1.1 states that using intended loss where it is greater than actual loss is consistent with § 2X1.1, but it does not draw upon § 2X1.1's attempt requirements for determining intended loss. Guideline § 2F1.1, along with § 2B1.1 . . . does employ these provisions of § 2X1.1 to determine offense level in cases of partially complete offenses (e.g., where a completed fraud or theft was part of a larger fraud or theft that was not complete). But this has nothing to do with the amount of loss for a completed crime. It has only to do with adding additional offense levels for attempted crimes where the defendant was caught in the middle of a larger scheme and is convicted only of the crimes he had completed up to the point where he was caught." *Yusufu*, 63 F.3d at 514.

We agree. Section 2F1.1 references section 2X1.1 for the limited principle espoused in that section; namely, in the same manner that an attempted offense triggers the same liability as if the offense had been completed, the amount of the intended loss determines the culpable loss (provided the offense is otherwise completed).

Under the plain language of section 1344, Oates was convicted of a complete offense. No uncompleted offenses were added to determine her base offense level. Upon her fraudulent endorsement of the time deposit agreement, Oates gained access to funds through a scheme or artifice, thereby defrauding a financial institution and violating section 1344. *See United States v. Saks*, 964 F.2d 1514, 1517-19 (5th Cir. 1992) ("The fraudulent loan transaction plainly exposed [the bank] and the other lenders to a risk of loss, which is all that is required under § 1344."); 18 U.S.C. § 1344

12

("Whoever knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution . . . ."). Section 2X1.1 is inapplicable to reduce the base offense level of Oates' conduct, which indisputably constituted a "complete" offense of bank fraud with regard to the fraudulently endorsed (but yet-to-be presented) $50,000 instrument. *See United States v. Studevant*, 116 F.3d 1559, 1564 (D.C. Cir. 1997) ("The [2X1.1(b)(1)] adjustment does not apply if 'the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense.' In this case, [the defendant] stole the checks, filled them out and turned them over to the person he believed was a fence. By so doing, he completed all of the acts he thought he had to in order to complete the offense."). The absence of presentment—which was thwarted by the police—does not change the completed nature of her offense. *See Yusufu*, 63 F.3d at 514 (distinguishing situation involving a trademark infringement scheme where crime was complete with regard to sent boxes but not complete with regard to others).

## Conclusion

Because the district court properly included the full face amount of the fraudulently endorsed time deposit agreement, and because reduction of the concomitant base offense level was not warranted by the completed nature of the bank fraud, we AFFIRM Oates' conviction and sentence.

AFFIRMED