**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph O. AIDEYAN, Defendant–
Appellant.**

No. 93–5298.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 19, 1993.

Decided Dec. 3, 1993.

H.H. Hester, Asst. U.S. Atty. (argued and briefed), Ernest W. Williams, U.S. Atty., Office of the U.S. Atty., Nashville, TN, for plaintiff-appellee.

Michael V. Thompson (argued and briefed), Nashville, TN, for defendant-appellant.

Before: MERRITT, Chief Judge, LIVELY, Senior Circuit Judge, and JOHNSTONE, District Judge *.

JOHNSTONE, District Judge.

Aideyan pleaded guilty in the district court to executing or attempting to execute bank fraud in violation of 18 U.S.C. § 1344. He appeals his sentence on four grounds. We affirm the district court's enhancement of Aideyan's sentence for obstruction of justice and for an offense involving more than one victim, and its denial of a full three-level reduction for acceptance of responsibility. We reverse the district court's five-level enhancement for a fraud offense involving the loss of more than $40,000, because Aideyan did not complete the acts necessary to steal that amount.

### I.

Aideyan's presentence report states that in July 1991, Nashville, Tennessee police arrested Aideyan and Nnanna Henry Nwadike for theft of property and fraudulent use of a credit card at a Nashville department store. An ensuing investigation revealed that at least four credit cards in the name of Thomas Hudson were fraudulently obtained and sent to a post office box which Aideyan had opened in Hudson's name. A woman named Nibokun Omoruyi, Aideyan's cohabitant and an employee of the nursing home where Hudson resided, had completed applications for some of the cards. The cards were then used to make purchases at several stores.

In March 1992 federal agents searched Aideyan's and Omoruyi's apartment and found an envelope addressed to Peter Aziz of Laurel, Maryland. The envelope contained three checks dated in May 1991 drawn on Thomas Hudson's accounts at Nashville banks in amounts totalling $20,500, and a letter signed by Aideyan reading "Hi Peter, What's happening? Hope cool? Everything totals $20,500.00, all we need here with my boys is $12,000.00. Everything is sailing thru ..." The agents also found various identification documents including blank birth certificates, 82 Dilaudid tablets in an envelope with no prescription, and a bank statement not belonging to Aideyan or his cohabitant.

Agents later discovered that two checks dated in June 1991 and totalling $10,850 had been stolen from Thomas Hudson, forged by Aideyan, and presented for payment at Nashville banks.

Aideyan was subsequently named in a five-count superseding indictment filed in the Middle District of Tennessee and charged with (1) possession of document-making implements and blank birth certificates with intent to use them in the production of false documents; (2) possession with intent to distribute hydromorphone; (3) executing or attempting to execute a bank fraud by obtaining First American Bank checks belonging to another with the intent that they be forged and negotiated; (4) executing or attempting to execute a bank fraud by obtaining Metropolitan Federal Bank checks belonging to another with the intent that they be forged and negotiated; and (5) use of a fraudulently obtained credit card to obtain items of an aggregate value of $1,000 or more.

Aideyan pleaded guilty to Count Four of the second superseding indictment in exchange for dismissal of the remaining four counts. The plea stipulated that he would be sentenced as if he had also pleaded guilty to possession of hydromorphone, and that the relevant conduct with regard to Count Four would include all losses or intended losses arising from frauds involving Thomas Hudson's name.

### II.

A. *Obstruction of Justice*

■] In calculating Aideyan's sentence, the district court increased his base offense by

* The Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

two levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, after finding that he had lied to the probation officer during the presentence investigation and to the court at the sentencing hearing by denying that he had entered a fraudulent marriage to obtain a "green card." Aideyan argues that this enhancement was improper because the marriage had nothing to do with any of the charges against him. Relying on *U.S. v. Williams,* 952 F.2d 1504 (6th Cir.1991), he contends that an enhancement under § 3C1.1 is proper only when the false testimony is material to and significantly impedes the investigation of the charged offense.

*Williams* is inapposite because it concerned falsehoods told to F.B.I. agents during an investigation. The court's ruling was accordingly premised on Note 3(g) to § 3C1.1, which specifically addresses this type of obstruction and limits its application to materially false statements which significantly impede the investigation or prosecution of the instant offense. Note 3(b), which addresses perjury, contains no such express limitations. Note 3(h), which addresses lies told to probation officers, requires "materially false information," but does not require a "significant impediment" to the investigation.

■ This circuit recently held that a defendant's perjurious testimony at detention and sentencing hearings must be material and nontrivial to warrant the obstruction enhancement. *U.S. v. Crousore,* 1 F.3d 382 (6th Cir.1993). However, the court also explained that the lie need not relate to the charges brought against the defendant: "Therefore, the test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the instant offense." *Id.* A false statement made at a sentencing hearing regarding information that is relevant to sentencing is material and nontrivial for purposes of § 3C1.1. *Id.,* citing Note 5 to § 3C1.1.

A sentencing court may consider prior criminal conduct, whether or not charged, in determining a sentence within the prescribed guideline range, or in determining if a departure is warranted. U.S.S.G. §§ 1B1.3(b) and 4A1.3. Under these provisions, Aideyan's

fraudulent marriage was relevant to his sentencing. The obstruction enhancement was warranted based on Aideyan's perjurious denial that the marriage was entered for a fraudulent purpose.

## B. *Multiple Victims*

■ The district court also increased Aideyan's base offense by four levels pursuant to U.S.S.G. § 3B1.1(a), due to Aideyan's role as leader/organizer of a criminal activity involving five or more participants. The court added two more levels pursuant to § 2F1.1(b)(2), for an offense involving more than minimal planning and a scheme to defraud more than one victim. Aideyan argues that the two level increase for above minimal planning amounts to impermissible "double counting" under *U.S. v. Romano,* 970 F.2d 164 (6th Cir.1992), because being an organizer of more than five persons necessitates more than minimal planning and the four level increase under § 3B1.1(a) already penalizes such conduct.

This argument fails because § 2F1.1(b)(2) requires a two level increase when either of two elements is present: more than minimal planning *or* more than one victim. While the minimal planning element is penalized by § 3B1.1(a), the multiple victim element is not. In this case, unlike in *Romano,* the district court found that both elements were present.

## C. *Intended Loss*

■ The district court calculated the total intended loss from Aideyan's frauds involving the name Thomas Hudson at $40,337.13, and accordingly increased his base offense by five levels pursuant to U.S.S.G. § 2F1.1(b)(1)(F). Aideyan argues that the three stolen checks found at his apartment should have been subtracted from this total because he never attempted to cash them. That would have left a total loss from the scheme of only $19,837.13, which would warrant an increase of only three levels pursuant to § 2F1.1(b)(1)(D).

The district court correctly included intended losses in its initial calculation under § 2F1.1. Note 7 to this Guideline states that

the relevant amount of loss is the amount the defendant intended to inflict, if greater than the actual loss. Additionally, Aideyan's plea stipulated that the relevant conduct with regard to Count Four would include intended losses.

However, the district court completed only the first step in the necessary calculation. We have held that Note 7 to 2F1.1 must be read in conjunction with § 2X1.1(b)(1), which governs attempts. *U.S. v. Watkins,* 994 F.2d 1192 (6th Cir.1993). This conclusion is consistent with the Commentary following Note 7, which states: "In the case of a partially completed offense, the offense level is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy); see Application Note 4 in the Commentary to § 2X1.1."

Section 2X1.1 provides that the sentence for an attempt offense which is not covered by a specific guideline is the base offense level for the substantive offense decreased by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

The record indicates that Aideyan signed and dated the three checks in question in May 1991, but never attempted to cash them and still had them when the police searched his apartment in March 1992. After such prolonged delay, the district court could not fairly conclude that he was "about to complete" the offense when apprehended. Thus, neither exception to § 2X1.1(b)(1) applies.

Application Note 4 to this section, cited in the Commentary to § 2F1.1, addresses the situation where an offense has been partially completed:

> In certain cases, the participants may have completed ... all of the acts necessary for the successful completion of part, but not all, of the intended offense. In such cases, the offense level for the count is whichever of the following is greater: the offense level for the intended offense minus 3 levels ... or the offense level for the part of

the offense for which the necessary acts were completed ... For example, where the intended offense was the theft of $800,-000 but the participants complete ... only the acts necessary to steal $30,000, the offense level is the offense level for the theft of [800,000] minus 3 levels, or the offense level for the theft of $30,000, whichever is greater.

Aideyan completed the acts necessary to fraudulently obtain $19,837.13, which includes the credit card purchases and the two checks presented for payment. Under Application Note 4, his sentence should have been enhanced based on this total, because the corresponding three-level enhancement required by § 2F1.1(b)(1)(D) is greater than the five-level enhancement required by § 2F1.1(b)(1)(F) for the total intended loss of $40,337.13, minus three levels. The district court erred in increasing the base level by five instead of three. Aideyan is entitled to a reduction of two levels.

### D. *Acceptance of Responsibility*

Finally, Aideyan argues that pursuant to § 3E1.1, the sentencing court should have given him a reduction of three levels instead of two for acceptance of responsibility, because his offense level was above sixteen. The three level reduction is not automatic, but requires that the defendant assist in his investigation or prosecution by providing timely information to the government or timely notification of his intent to plead guilty. § 3E1.1(b)(1) and (2). Aideyan did not meet either criterion.

### III.

For the reasons stated above, we reverse the district court's ruling as to the calculation of intended losses, and remand for resentencing in accordance with this opinion. We affirm the district court's ruling in all other respects.