41 F.3d 1508
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward ISOME, Jr. (93-6374) and Willie J. Moore (93-6604),
Defendants-Appellants.
 Nos. 93-6374, 93-6604.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1994.
 
 Before: KEITH and DAUGHTREY, Circuit Judges; and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Edward Isome, Jr. and Willie Moore challenge their sentences for conspiring to defraud the United States in violation of 18 U.S.C. Sec. 371, and, in Moore's case, also for bank fraud in violation of 18 U.S.C. Sec. 1344. Isome contends that his offense level was calculated with reference to losses which did not exist, and that his offense level should not have been increased both for his role in the offense and for an offense involving more than one victim. Moore contends that his offense level erroneously was increased for obstruction of justice. We affirm.
 
 I.
 
 2
 Isome and Moore were two of 27 defendants charged in an 82-count indictment with bank fraud, theft of mail matter, and conspiring to defraud the United States. The defendants were involved in a "split deposit" scheme, whereby the participants obtained blank checks on a number of bank accounts. Through stealing mail, the participants obtained financial information on various postal patrons. Using this information, the participants made out checks payable to the postal patrons and forged their endorsements. The participants then presented these checks for deposit to the postal patrons' accounts, withdrawing a portion of the "deposited" funds in cash. Generally, the participants went to a branch other than the one at which the postal patron conducted business. One would attempt the deposit/withdrawal at the drive-through window, while another entered the bank as if to conduct business, but instead observing for signs that the teller was suspicious. Unless the participants were alerted, the deposit/withdrawal went through. The participants thus received cash advances on worthless checks, and the banks did not discover until several days later that they had advanced large sums of money which they could not collect. According to defendants' presentence reports, the check cashing and split deposit scheme had been on-going since 1986, and had resulted in losses exceeding $180,000.
 
 II. ISOME
 
 3
 Isome was charged in counts 1, 42-46, 50 and 82 of the indictment, all but the last of which alleged bank fraud in violation of 18 U.S.C. Sec. 1344. Count 82 charged Isome with conspiring to defraud the United States, alleging as overt acts all of the acts set forth in the preceding counts 1-81. Isome pled guilty to count 82, and the government dismissed the remaining counts against him. The presentence report described Isome's role in the offense and the amount of the loss, stating:
 
 
 4
 7. Edward Isome Jr. was heavily involved with this split deposit scheme. Based on statements made by other codefendants, he recruited and trained other members of the conspiracy on how to forge and cash these bogus checks. He has been held responsible for participating in the cashing of numerous checks, and holding an organizing role in this conspiracy. As is reflected in his prior record, Isome Jr. had a knowledge of the banking system and knew other codefendants whom he held some control over during this split deposit scheme.
 
 
 5
 ....
 
 
 6
 8. The Financial Litigation Unit of the U.S. Attorney's Office is presently in the process of investigating this offense to determine the specific victims and the exact loss to each. Isome Jr. is accountable for $39,070 in total relevant conduct, as it relates to the loss while he was not incarcerated on other charges.
 
 
 7
 (App. 177-78.)
 
 
 8
 The presentence report calculated Isome's base offense level at 6 pursuant to U.S.S.G. Sec. 2F1.1(a). This level was increased by 4, because the amount of loss fell between $20,000 and $40,000 (Sec. 2F1.1(b)(E)); and again by 2, because the offense involved an elaborate scheme by numerous defendants to defraud more than one victim (Sec. 2F1.1(b)(2)(B)); and finally by 4, due to Isome's role in the offense (Sec. 3B1.1). The total then was reduced by 3 for acceptance of responsibility, resulting in a 30-37 month range.
 
 
 9
 Isome filed objections to the presentence report, principally challenging its calculation of the loss for which he was responsible. Isome stated that the government had produced the checks reflecting the loss attributable to him, and that these checks totalled $48,000. Isome further contended that the loss for sentencing purposes could not equal the total for which the checks were written, but only the amounts received by the defendants as cash withdrawals, which, he estimated, was approximately half of the total amount of the checks. Isome did not object to the two-level enhancement for an offense involving multiple victims.
 
 
 10
 In an addendum to the presentence report, the probation officer noted that the government had filed no objections, and that "defendant's objections were resolved prior to sentencing in this case." (App. 198.) No objections to the presentence report were made at sentencing. The court sentenced Isome to 30 months.
 
 
 11
 On appeal, Isome contends that his base offense level should not have been increased by 4 for an offense involving a loss in excess of $20,000. His challenge to the calculation of the loss can be sustained only if it constitutes plain error under Fed.R.Crim.P. 52(b), i.e., a clear or obvious error which affected the defendant's substantial rights. United States v. Olano, 113 S.Ct. 1770, 1777-78 (1993). Normally, a defendant asserting plain error must make a specific showing of prejudice to satisfy the "affecting substantial rights" element of plain error. Id. A court of appeals has the authority to correct plain error affecting substantial rights if the error " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " Id. at 1779 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).
 
 
 12
 Isome falls short of demonstrating the plain error necessary for this court to reverse his sentence. Isome has not demonstrated that the amounts paid on the specific transactions for which he is being held accountable actually fall short of the $20,000 mark. If, as Isome stated in response to the presentence report, discovery obtained from the government revealed that he was involved in the presentation of checks totalling $48,000, his claim that his cohorts received only half of this amount would still result in a loss in excess of $20,000. Even if the numerator in this calculation is reduced to $39,070, Isome's accountability still remains an open question because we are told only that the participants in the scheme received approximately half of the amounts in cash, and a difference of a few dollars could place Isome over or under the $20,000 dividing line.
 
 
 13
 Clearly, the district court could have investigated and decided these questions, had the issues been properly presented. Given the novelty of the fact situation of this case, in combination with the sparse record on appeal, Isome simply has not demonstrated that the district court made a clear and obvious error, and that he suffered prejudice as a result. Olano, 113 S.Ct. at 1778. Due to Isome's failure to demonstrate plain error, we must affirm this aspect of his sentence.
 
 
 14
 Isome also contends that the court impermissibly counted the same conduct twice in imposing enhancements under U.S.S.G. Secs. 2F1.1(b)(2)(B) and 3B1.1:
 
 
 15
 Sec. 2F1.1. Fraud and Deceit....
 
 
 16
 (b) Specific Offense Characteristics
 
 
 17
 ....
 
 
 18
 (2) If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels.
 
 Sec. 3B1.1. Aggravating Role
 
 19
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 20
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 21
 In challenging the application of both enhancements, Isome relies on United States v. Romano, 970 F.2d 164, 167 (6th Cir.1992) (enhancement for being organizer or leader of offense, together with enhancement for offense involving more than minimal planning, constitutes impermissible double-counting; "by its very nature, being an organizer or leader of more than five persons necessitates more than minimal planning."). Isome's reliance on Romano is misplaced because the two-level enhancement under Sec. 2F1.1(b) in this case was imposed under subparagraph (B), which pertains to offenses involving more than one victim, and not subparagraph (A), which pertained to offenses involving more than minimal planning. This distinction was upheld in United States v. Aideyan, 11 F.3d 74, 76 (6th Cir.1993), where the court affirmed application of the organizer/leader enhancement in addition to the multiple victim enhancement of Sec. 2F1.1(b)(2)(B). "While the minimal planning element is penalized by Sec. 3B1.1(a), the multiple victim element is not. In this case, unlike in Romano, the district court found that both elements were present." Id. Isome's double-counting challenge thus has no merit.
 
 III. MOORE
 
 22
 Moore was charged in counts 1 and 82 of the indictment, and testified on his own behalf at trial. The presentence report stated that Moore was extensively involved with the transportation aspect of the organization. Further, the report stated that Moore lied at trial regarding his involvement in the offense, and recommended that his base offense level be enhanced for obstruction of justice under U.S.S.G. Sec. 3C1.1. In following the presentence report's recommendation, the court stated:
 
 
 23
 [T]he court finds, having heard the testimony, that Mr. Moore perjured himself when he testified that he was just along for the ride and that he wasn't just along for the ride which he knew very well, having just been involved in a similar transaction a few days before which they caught on the surveillance cameras, as I recall, and the court would find he literally perjured himself in that regard, and therefore the additional levels for obstruction of justice should be assessed, and we'll overrule the objections.
 
 
 24
 (App. 213.) Moore now challenges the sufficiency of the court's findings in support of the obstruction of justice enhancement.
 
 
 25
 This court reviews application of the sentencing guidelines de novo.[1] United States v. Hicks, 4 F.3d 1358, 1360 (1993). Section 3C1.1 provides:
 
 
 26
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 27
 Perjury is one type of conduct which justifies the enhancement. U.S.S.G. Sec. 3C1.1, comment. (n. 3(b)); United States v. Dunnigan, 113 S.Ct. 1111 (1993). In determining what constitutes perjury, the Supreme Court relied on the definition of the federal perjury statute: "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Id. at 1116. The Court addressed a district court's obligations under Sec. 3C1.1, stating:
 
 
 28
 [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 
 29
 Id. at 1117 (citations omitted; emphasis added).
 
 
 30
 In this case, the court's finding encompassed all of the factual predicates for a finding of perjury: that Moore (1) gave false testimony; (2) knowingly; (3) regarding his involvement in the offense, i.e., being "just along for the ride," a "material" matter.[2] In sum, the district court's findings are sufficient under Dunnigan, and support imposition of the obstruction of justice enhancement.
 
 
 31
 At oral argument, defense counsel expanded Moore's challenge by arguing that the district court's finding was not supported by adequate evidence in the record. This issue was neither raised before the district court nor briefed on appeal. The district court heard the evidence at trial and was particularly well situated to hear and evaluate the evidence, including the rebuttal testimony regarding the evidence obtained by the surveillance camera. We are presented with no basis for concluding that the court's factual finding was erroneous.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This assumes that the defendant made an adequate objection before the district court. In this case, Moore's attorney merely asked whether the obstruction of justice enhancement would be applied, and did not challenge the adequacy of the court's findings in imposing the enhancement. Nonetheless, given that counsel questioned the enhancement, we will assume for purposes of discussion only that an adequate objection was made
 
 
 [2]
 The commentary to Sec. 3C1.1 defines material evidence, fact statement or information as "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. Sec. 3C1.1, comment. (n. 5)