level and thus controlled the group, pursuant to USSG § 3D1.2(b). Since the record reveals the district court's awareness of authority to grant a discretionary downward departure, we have no jurisdiction to review the decision not to depart, *see United States v. Owusu*, 199 F.3d 329, 348-50 (6th Cir. 2000), *United States v. Coleman*, 188 F.3d 354, 357 (6th Cir.1999) (en banc), and therefore **DISMISS** the cross-appeal. At re-sentencing, the defendant may again seek a downward departure, and both parties may raise any issue pertinent to calculating the appropriate sentence. *Cf. United States v. Pasquarille*, 130 F.3d 1220, 1222 (6th Cir. 1997) (finding jurisdiction in the district court to reevaluate all matters relevant to sentencing following vacation of a conviction under § 2255). Accordingly, we **REMAND** for further proceedings not inconsistent with this opinion.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0012P (6th Cir.)
File Name: 01a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant/*
            *Cross-Appellee,*

            *v.*

            Nos. 99-4244/4285

ALBERT J. DESANTIS,
            *Defendant-Appellee/*
            *Cross-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00100—John D. Holschuh, District Judge.

Argued: December 7, 2000

Decided and Filed: January 11, 2001

Before: JONES, BOGGS, and SILER, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Dale E. Williams, Jr., ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellant. Gordon Hobson, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Dale E. Williams, Jr., ASSISTANT UNITED STATES

ATTORNEY, Columbus, Ohio, for Appellant. Gordon Hobson, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge. The government appeals and the defendant cross-appeals the sentence imposed after a guilty plea to bankruptcy fraud, money laundering, and witness tampering. Because the district court erroneously granted a three-level reduction in offense level based on the defendant's only having attempted the substantive offense of fraud, we vacate the sentence and remand for further proceedings.

**I**

On March 12, 1999, Albert J. DeSantis pled guilty to three counts of a sixteen-count indictment charging him with various crimes arising out of a scheme to execute and conceal a bankruptcy fraud. The relevant counts of the indictment charged DeSantis with bankruptcy fraud, in violation of 18 U.S.C. § 157(1), engaging in a monetary transaction in property derived from a specified unlawful activity ("money laundering"), in violation of 18 U.S.C. §§ 2 and 1957, and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3).

While on release from federal custody resulting from a previous mail and securities fraud conviction, DeSantis filed a voluntary petition for personal Chapter 11 reorganization in the Southern District of Ohio. In the petition and associated schedules, DeSantis listed $3,665,100 in total assets belonging to himself and his wife and $13,161,377 in total liabilities. He failed to disclose $979,677.63 in net assets.

At the plea hearing, a Special Agent of the Internal Revenue Service, Criminal Investigation Division, testified in anticipation of DeSantis's allocution:

committed. Success of the scheme is not an element of the crime.

The district court remarked that, in order to inflict the loss he wanted to inflict, DeSantis had to undertake a variety of other acts after filing the petition, such as filing a reorganization plan, meeting with creditors, executing the plan, etc. Were he to have undertaken these acts for purposes of executing or attempting to execute his scheme, he would have been subject to conviction of additional counts of bankruptcy fraud under 18 U.S.C. §§ 157(2), 157(3). That each subsequent filing containing false disclosures of assets is a separate complete statutory offense confirms that DeSantis's filing of the petition, rather than completion of the scheme to defraud, is the substantive offense.

An unsuccessful scheme to defraud creditors of a given amount of money is not an attempted violation of 18 U.S.C. § 157(1). Attempted bankruptcy fraud could arise only in the unusual situation of an unsuccessful attempt to file the bankruptcy petition itself.

As the government notes, DeSantis pled guilty to bankruptcy fraud, not attempted bankruptcy fraud. Since it is undisputed that he in fact filed the petition for the purpose of executing or attempting to execute a scheme to defraud creditors, he was guilty of the completed offense for purposes of both the statute and the guidelines. Completion of the substantive offense under the guidelines renders the § 2X1.1 attempt reduction unavailable. Accordingly, the district court erred in reducing DeSantis's offense level by three levels pursuant to the § 2X1.1(b)(1) attempt provision.

**III**

Having found error in the district court's calculation of the offense level for bankruptcy fraud, we **VACATE** the judgment of sentence. Accordingly, we need not address the government's alternative argument that the district court should have calculated the offense level for money laundering in order to ascertain which offense yielded the higher offense

devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so (1) files a petition under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 157(1); *cf.* 18 U.S.C. § 157(3) (proving the same for a person who "makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition . . . ."); 18 U.S.C. § 157(2). Section 157(1) thus contains three elements: 1) the existence of a scheme to defraud or intent to later formulate a scheme to defraud and 2) the filing of a bankruptcy petition 3) for the purpose of executing or attempting to execute the scheme. The statute makes the crime complete upon the *filing* of the bankruptcy petition when the filing is accompanied by the other two defined circumstances.

Filing itself is the forbidden act. The district court stated that this

> is a case in which the defendant was charged with and pled guilty to attempt to execute a scheme to defraud his creditors by concealing assets that belong to the bankruptcy estate, and to further that scheme, he filed a petition in the bankruptcy court. The scheme did not succeed, and apparently only the first step was taken by the defendant, the filing of a petition in the bankruptcy court.

This is not correct. DeSantis pled guilty to filing a bankruptcy petition "for the purpose of executing or concealing [or attempting to execute or conceal] . . . a scheme or artifice" to defraud, which scheme he had "devised or intend[ed] to devise . . . ." 18 U.S.C. § 157(1). Section 157(1) does not criminalize executing or attempting to execute a scheme to defraud, but instead requires that such a scheme attend the filing of the bankruptcy petition. Since attempting to execute a scheme to defraud satisfies the former element of the crime, the scheme ordinarily will not come to fruition before the complete substantive offense has been

From on or about August 3, 1993, through November 4, 1996, Albert J. DeSantis attempted to conceal his personal assets from his creditors and eventually the bankruptcy court by transferring funds and other . . . assets to corporations named Bub's Pizza and Video, Inc., and Soul to Soul, Inc. These companies were represented as being owned by Mr. DeSantis's brother, but [an] investigation disclosed [that] the companies were actually under the direct control of Albert J. DeSantis. Albert J. DeSantis deposited and caused to be deposited funds belonging to him into accounts held in the names of the previously mentioned corporate entities to conceal his interest in these assets from his creditors and the United States Bankruptcy Court.

[The] investigation disclosed that Albert J. DeSantis failed to list assets having an aggregate value of $921,746 on the bankruptcy petition and schedules that he filed with the Court.

On July 18, 1996, one day after the bankruptcy petition was filed, Combo's Food and Video, Inc., purchased a home for the personal use of Albert J. DeSantis and his wife. Some of the funds used to acquire and pay for the residence were traced directly back to Albert J. DeSantis.

Mr. Albert J. DeSantis subsequently furthered his scheme to defraud by creating and causing to be created false and fraudulent documents which purported to show that moneys actually due Albert J. DeSantis were moneys owed to Combo's Food and Video, Inc. or Bub's Pizza and Video, Inc.

. . . [O]n or about August 7, 1996, Albert J. DeSantis knowingly and unlawfully engaged in a financial transaction affecting interstate commerce through a financial institution involving property of a value greater than $10,000 that was derived from the specified unlawful activity, specifically concealment of assets, in violation of Title 18 United States Code Section 152(8).

On or about that date, Albert J. DeSantis caused a check in the amount of $100,000, which represented money rightfully due and owing Albert J. DeSantis, to be

made payable to and deposited into a bank account in the name of Combo's Food and Video, Inc., Columbus, Ohio. Previously, in August 1996, Albert J. DeSantis agreed to accept the sum of $100,000 as final payment for certain partnership interests that Albert J. DeSantis personally owned and sold to another entity on an earlier date. Albert J. DeSantis then caused to be created in August 1996 a false document, specifically a spurious lease, from Combo's Food and Video, Inc., for the sum of $100,000 for property known as the Newport Music Hall. The document had been falsely dated June 30, 1995, at the direction of Albert J. DeSantis. This transaction was committed in violation of Title 18 U.S.C. Sections 157 and 2.

[O]n or about the period October 25, 1996, through October 31, 1996, Albert J. DeSantis knowingly tampered with a witness named Kenneth C. Schaefer, who had been subpoenaed to testify before the grand jury investigating Mr. DeSantis. Albert DeSantis attempted to influence Mr. Schaefer's testimony by instructing and coaching him as to how to answer evasively and untruthfully questions from law enforcement investigators and the grand jury in Columbus, Ohio, relating to Albert J. DeSantis's business affairs and bankruptcy filing. These acts were committed in violation of Title 18 U.S.C. Section 1512(b)(3).

DeSantis confirmed the accuracy of the agent's description of his affairs.

The district court grouped the bankruptcy fraud and money-laundering charges pursuant to USSG § 3D1.2(b) because a common criminal objective and a single harm connected them. Under USSG § 3D1.2(c), these counts were further grouped with the witness-tampering charge. Under USSG § 3D1.3(a), the highest offense level among the grouped counts controls. The base offense level for bankruptcy fraud is six. For offenses involving an amount of loss between $800,000 and $1.5 million, the guidelines specify an eleven-level increase from the base offense level. An offense

resolving a case where the defendant argued for the application of both the attempt rule and the intended loss rule, this court addressed each point separately. *See United States v. Robinson*, 69 F.3d 538 (table), Nos. 94-6252, 94-6253, 1995 WL 641284 (6th Cir. Oct. 31, 1995). *Robinson* noted that "pursuant to § 2X1.1(b)(1), the base offense level [of six for bank fraud] is reduced three levels if the defendant's conduct only constituted an attempt." *Id.* at *2. The court held the attempt reduction inapplicable because "Robinson had completed all such acts he believed necessary for the successful completion of the substantive offense" of bank fraud. The court proceeded to consider the amount of the intended loss, doing so in light of the three-part *Watkins* analysis. The court concluded that the appropriate figure included the actual bank-fraud loss of $30,422.97 plus an "intended" loss of $50,000, based on the defendant's attempt to secure that amount from the bank. *See id.* at *3. The method of the *Robinson* court thus demonstrates that the three-level attempt reduction applies to attempted frauds, regardless of the defendant's proximity to actually inflicting the loss he intends. Put another way, the relevant substantive offense for purposes of evaluating § 2X1.1(b)(1) attempts is the fraud itself, not fraudulent deprivation of a particular sum. *See United States v. Blitz*, 151 F.3d 1002, 1010-11 (9th Cir. 1998) (recognizing disagreement with this court's *Watkins* test for attempted or intended loss, applying its own test for attempted or intended loss, then considering — as a separate issue — the applicability of the § 2X1.1(b)(1) attempt reduction, and rejecting application of it because the defendants had, with each fraudulent telemarketing call, completed the substantive offense of wire fraud).

In this case, the substantive offense is bankruptcy fraud. Since the Guidelines do not contain a separate definition of the kind of fraud one must commit to come within § 2F1.1(a), which specifies base offense level six for all frauds, courts should turn to the statutory definition of the offense to determine whether a particular defendant attempted a fraud or completed one. DeSantis pled guilty to a violation of 18 U.S.C. § 157(1), which provides, "A person who, having

*attempted* substantive offenses. Instead, whether the § 2X1.1 reduction for mere attempts applies is controlled by whether "the defendant completed all the acts the defendant believed necessary for successful completion of the *substantive offense* . . . ." as defined in the guidelines. USSG § 2X1.1(b)(1) (emphasis added).

As this court observed in another bankruptcy fraud case, "[t]he applicable Sentencing Guideline provision for offenses involving fraud is USSG § 2F1.1 and its accompanying commentary. Section 2F1.1 assigns a base offense level of six, and then adds incremental punishment according to the amount of loss resulting from the fraud. 'Loss' under § 2F1.1[(b)(1)] means the actual or intended loss to the victim, whichever is greater." *Guthrie*, 144 F.3d at 1011. The defendant in *Guthrie* challenged the amount of loss calculation. Although the defendant completed part of the fraud and inflicted some actual loss, this court upheld his sentence based on the full amount of the "intended" loss, but did so without citing the facts that supported the district court's finding as to the amount of the "intended" loss. *See ibid.* Nothing in that case indicates whether the defendant secured a three-level reduction for mere attempts under § 2X1.1(b)(1). Similarly, while a defendant in *Brown* was held responsible for not $152,960.61 in actual losses but $511,023.61 in "intended" losses, the three circumstances identified in *Watkins*, including the taking of all steps necessary to inflict the loss, were present, which dictated consideration of the full "intended" loss. *See Brown*, 151 F.3d at 489-90. Since Mr. DeSantis had to take several additional steps in carrying out his plan before inflicting the "intended" loss, *Brown* offers little guidance in resolving this case. The government's citation to *United States v. Flowers*, 55 F.3d 218, 221 (6th Cir. 1995), likewise provides limited help since the check-kiting scheme in that case had been completed and an actual loss had been inflicted.

The cases that clearly distinguish the § 2X1.1 attempt rule from the "intended" loss rule of § 2F1.1, note 8, provide the most illumination to the question before this court now. In

involving more than minimal planning receives a two-level increase, *see* USSG § 2F1.1(b)(2)(A), and an offense involving violation of a judicial or administrative order (in this case, failure to notify the trustee and bankruptcy court of certain assets) receives another two-level increase, *see* USSG § 2F1.1(b)(4)(B). Since DeSantis was on release from federal custody when he committed the offense, he received a three-level increase, *see* USSG § 2J1.7. DeSantis's role as an organizer or leader of the offense warranted another two-level enhancement, *see* USSG § 3B1.1(c), and, as described above, his witness tampering resulted in still another two-level adjustment, *see* USSG § 3C1.1. These increases yielded an adjusted offense level of 28. Acceptance of responsibility reduced the offense level by two, *see* USSG § 3E1.1(a), and prompt notice of intent to enter a guilty plea brought it down another level, *see* USSG § 3E1.1(b)(2), to twenty-five. Prior tax evasion, mail fraud, and securities fraud convictions gave DeSantis six criminal history points, which put him in Category III. The guidelines range for these circumstances is 70-87 months.

Mr. DeSantis filed an objection to the offense level computation and sought a downward departure. Because the scheme to defraud had not succeeded and had only just begun, the district court applied the three-level reduction for attempts, *see* USSG § 2X1.1, bringing the defendant down to a sentencing range of 51-63 months. The district court imposed concurrent sentences of 48 months on all three counts and a consecutive three-month sentence for the mail-fraud and securities-fraud convictions on which the court was also sentencing DeSantis, following remand from this court in another case. The district court denied the request for a downward departure, commenting that "this case is not so unusual, so unique that it is outside the heartland of cases considered by the commission, and the defendant's motion for a downward departure, therefore, is denied."

The United States timely appealed. DeSantis timely cross-appealed.

## II

This court reviews the district court's findings of fact for clear error and gives de novo consideration to the application of the guidelines to the facts. *See United States v. Jarman*, 144 F.3d 912, 914 (6th Cir. 1998) (citing *United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997), and *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989)).

The district court found, without objection, that the loss DeSantis intended to inflict was $979,677.63, but that the bankruptcy estate suffered no actual loss thanks to the diligence of the United States trustee who, following conversion of the petition to Chapter 7, obtained the hidden assets for the estate before the scheme to defraud could be consummated. The court explained its view of the case:

> From a legal viewpoint, this then is a case in which the defendant was charged with and pled guilty to an attempt to execute a scheme to defraud his creditors by concealing assets that belong to the bankruptcy estate, and to further the scheme, he filed a petition in the bankruptcy court. The scheme did not succeed, and apparently only the first step was taken by the defendant, the filing of a petition in the bankruptcy court. Before the scheme was thwarted, the scheme to be completed and creditors defrauded, the defendant would have to have taken other steps during the course of the bankruptcy proceeding including, just as an example, the filing of a Chapter 11 plan that did not include the concealed assets.

The court distinguished *United States v. Brown*, 151 F.3d 476 (6th Cir. 1998), and *United States v. Guthrie*, 144 F.3d 1006 (6th Cir. 1998), and held that,

> While the intended loss was $979,677.63, the defendant . . . "must have completed or been about to complete, but for interruption, all of the acts necessary to bring about the loss." The government has not shown this to be true, and the record before the Court would not support such

a finding. The defendant, therefore, is entitled to receive and must receive a three-level reduction to his offense level.

(quoting *United States v. Watkins*, 994 F.2d 1192 (6th Cir. 1993)).

The district court conflated the legal standards appropriate to resolving two related but distinct sentencing issues. This confusion resulted in erroneous application of the attempt reduction.

In calculating the "intended or attempted loss" enhancement under USSG § 2F1.1, *Watkins* imported the standard for assessing attempted substantive offenses from USSG § 2X1.1(b)(1). Application note 8 of the commentary to § 2F1.1 provides that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." USSG § 2F1.1, comment. (n.8). *Watkins* held that the guidelines' standard for ascertaining whether an attempted substantive offense occurred, *see* USSG § 2X1.1(b)(1) (providing for a 3-level reduction in the offense level for attempting a substantive crime unless "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or . . . was about to complete all such acts but for apprehension . . . ."), controls the calculation of the amount of the "intended or attempted loss" under § 2F1.1. *See Watkins*, 994 F.2d at 1195. *Watkins* held that "three factors must be present for an amount of loss to be relevant under section 2F1.1. First, as application note [8] instructs, the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for interruption, all of the acts necessary to bring about the loss." *Id.* at 1196.

Contrary to the district court's conclusion, *Watkins* did not hold that failure to complete all of the acts necessary to produce the full amount of the intended loss mandates application of the three-level § 2X1.1(b)(1) reduction for