NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0400n.06
Filed: May 13, 2005

No. 04-5218

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JANELL CAGE, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
|     Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**Before: COLE and GIBBONS, Circuit Judges; SCHWARZER, District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Janell Cage obtained names, addresses, and social security numbers of other individuals and used this information to apply for loans and credit cards and take over existing bank accounts. She pled guilty to one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2). Cage was sentenced to thirty months of imprisonment followed by three years of supervised release. She appeals the district court's determination that two enhancements applied to her base offense level for purposes of determining her sentencing range under the United States Sentencing Guidelines. In light of *United States v. Booker*, 125 S. Ct. 738 (2005), we vacate Cage's sentence and remand for resentencing.

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

I.

From approximately December 13, 2002, through May 9, 2003, Cage used her position as a medical transcriptionist in order to access confidential information about patients, including names, dates of birth, and social security numbers. Armed with this information, Cage submitted over thirty applications for credit and took over four existing accounts. She obtained cash advances, bought various items, and bought and insured a car.

The United States Postal Inspection Service initiated an investigation into Cage's activities on March 4, 2003, after receiving information from USAA Credit Card that an individual in Memphis had taken over several credit card accounts. Agents interviewed Cage, who admitted using her employment to obtain credit reports on the Internet and then apply for new accounts or take over existing accounts.

A federal grand jury in the Western District of Tennessee indicted Cage on June 30, 2003. On October 17, 2003, Cage pled guilty to Count I of the indictment, which charged that Cage knowingly and with intent to defraud used an unauthorized access device issued by USAA to Karl and Theresa Robinson, in violation of 18 U.S.C. § 1029(a)(2). The remaining counts were dismissed. However, the offense level for purposes of sentencing included all relevant conduct pertaining to all counts of the indictment.

A presentence investigation report was prepared. It assigned Cage a base offense level of six. It then added ten levels pursuant to U.S.S.G. § 2B1.1(b)(1)(F)[1] for causing a loss of more than

---

[1]All references to individual guideline provisions refer to the 2003 edition of the Guidelines Manual.

$120,000. Included in Cage's relevant conduct were three checks issued by People First Finance (drawn on accounts that Cage opened) that totaled $100,722.22. People First Finance determined that the checks were fraudulent and cancelled the accounts from which they were drawn before Cage could cash them, thus preventing any actual loss to the company. The report also recommended adding two levels for the unlawful use of any means of identification to obtain another means of identification, under U.S.S.G. § 2B1.1(b)(9)(C)(i). Cage's total offense level of eighteen, combined with her criminal history category of II, gave her a guidelines range of thirty to thirty-seven months.

At the sentencing hearing, the district court adopted the recommendations of the presentence report. It also declined to decrease Cage's offense level by three levels, rejecting Cage's argument that because she did not pass the People First Finance checks, her possession of these checks should be considered an attempt. The district court sentenced Cage to thirty months of imprisonment, followed by three years of supervised release.

Cage filed a timely notice of appeal.

## II.

Cage appeals the district court's decision to apply a ten level enhancement to her base offense level. Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), the court increased Cage's offense level by ten levels, because the loss involved more than $120,000. Cage argues that the ten level enhancement should not apply and that additionally she should receive a three level reduction under the attempt guideline provision of U.S.S.G. § 2X1.1(a) because she never intended to negotiate three checks from People First Finance. She also argues that her sentence should be vacated in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004) (and accordingly *Booker*, 125 S. Ct. at 738).

We conclude that the district court, while appropriately determining in a pre-*Booker* context that the amount of intended loss exceed $120,000, made a factual finding that violated Cage's Sixth Amendment rights and requires us to vacate Cage's sentence and remand for resentencing. We also conclude that the attempt provision does not apply to the facts of Cage's case. On remand, the district court should not apply that provision when determining Cage's advisory guidelines range.

A.

U.S.S.G. § 2B1.1(b)(1)(F) requires the district court to increase a defendant's offense level by ten if the loss perpetrated by the defendant totaled more than $120,000. Cage objects to the inclusion in the loss calculation of three blank checks issued by People First Finance, which totaled $100,722.22. The checks include: (1) a check on the account of Gordon McMurchie in the amount of $33,100, mailed to Cage on January 6, 2003; (2) a check on the account of Lisa Wilson in the amount of $22,022.22, mailed to Cage on December 13, 2002; and (3) a check on the account of Janell Caldwell in the amount of $45,600, mailed to Cage on March 20, 2003. People First Finance cancelled the accounts from which the first two checks were issued on January 16, 2003, and cancelled the account from which the third check was issued on March 21, 2003.

The application notes for § 2B1.1(b)(1) indicate that the court is to apply the enhancement based upon the greater of the actual or intended loss. In this case, there was no actual loss to People First Finance, because the checks were determined to be fraudulent before they were cashed. Thus, loss for the purposes of this section of the sentencing guidelines is the intended loss, defined as "(I) the pecuniary harm that was intended to result from the offense; [which] (II) includes pecuniary harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1(b)(1), application

note 3(A)(ii).

In *United States v. Watkins*, this court set forth the standard used to evaluate intended losses. 994 F.2d 1192 (6th Cir. 1993). "In calculating the 'intended or attempted loss' enhancement under USSG § 2F1.1, *Watkins* imported the standard for assessing attempted substantive offenses from USSG § 2X1.1(b)(1)." *United States v. DeSantis*, 237 F.3d 607, 611 (6th Cir. 2001). *Watkins* held that, in order for an amount to be included as an intended loss, the court must find that three factors apply. "First, . . . the defendant must have intended the loss. Second, it must have been possible for the defendant to cause the loss. Third, the defendant must have completed or been about to complete but for interruption, all of the acts necessary to bring about the loss." *Watkins*, 994 F.2d at 1196. In November 2001, U.S.S.G. § 2B1.1 was revised such that intended loss now includes loss that "would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1, application note 3(A)(ii)(II). This revision effectively overruled the second prong of the *Watkins* test. *See United States v. McBride*, 362 F.3d 360, 374 (6th Cir. 2004). Nevertheless, the other prongs of *Watkins* provide guidance for assessing when the intended loss enhancement should apply.

In this case, Cage opened three accounts and obtained checks on those accounts in the amount of $100,722.22. Cage does not contest the fact that these checks totaled that amount. Instead, she argues that she never intended to negotiate those checks. The district court found, however, that the time period between the mailing of the checks and the cancellation of the accounts was not so long as to indicate that she was not going to negotiate the checks. Essentially, the district court determined under *Watkins* that Cage was "about to complete but for interruption [the cancellation of the accounts], all of the acts necessary to bring about the loss." 994 F.2d at 1196.

The district court did not clearly err in applying this enhancement. *See United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998) (establishing that this court will not disturb an amount of loss calculation unless clearly erroneous). Cage argues that the time period between the issuance of the checks and the cancellation of the accounts evidences that she did not intend to negotiate the checks. She relies on *United States v. Aideyan*, 11 F.3d 74 (6th Cir. 1993), to establish that an intended loss enhancement is improper if the defendant does not negotiate checks in a timely fashion. In *Aideyan*, the defendant possessed an envelope containing three stolen checks. *Id.* at 75. The checks were dated May 1991, but not discovered until March 1992. *Id.* This court decided that "the district court could not fairly conclude that he was 'about to complete' the offense when apprehended." *Id.* at 77.

In this case, the time period between the issuance of the checks and the cancellation of the accounts was much less than the time period at issue in *Aideyan.* A check was issued to Janell Caldwell on March 20, 2003, and the account was cancelled on March 21, 2003. Another check issued on the account of Gordon McMurchie on January 6, 2003, and that account was cancelled on January 16, 2003. A third check issued on December 13, 2002, and the account was cancelled on January 16, 2003. Cage's possession of these checks for a period of one day to one month does not indicate that she was never going to negotiate them. Thus, these checks were properly considered as part of the intended loss in the pre-*Booker* context.

Cage next contends that the district court's application of the ten level enhancement violated her Sixth Amendment rights. She received this enhancement based on the district court's factual finding that the three People First Finance checks, whose amounts were not disputed by Cage, were

an intended loss. *See Guthrie*, 144 F.3d at 1011 (noting that the determination of the amount of loss is a finding of fact). Cage did not raise a *Booker* argument in the district court with respect to the application of this enhancement. Therefore, this court's review of her sentence is for plain error. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005).

In this case, Cage received an enhanced sentence based upon the district court's determination of the amount of loss attributable to her conduct. This factual finding violated her Sixth Amendment rights and accordingly constitutes plain error under this court's case law interpreting *Booker*. *See id.* at 378-81. We therefore vacate Cage's sentence and remand her case to the district court for resentencing.

B.

In addition to arguing that the ten level enhancement should not apply, Cage argues that she is entitled to a three level reduction pursuant to U.S.S.G. § 2X1.1(b)(1), the guideline for attempt, because she never negotiated the three People First Finance checks. Cage's contention is without merit and, on remand, the district court should not grant her a three level reduction for purposes of determining her advisory guidelines range.

The attempt guideline applies to substantive offenses. U.S.S.G. § 2X1.1(a). Substantive offenses are defined as "the offense[s] that the defendant was convicted of soliciting, attempting, or conspiring to commit." *Id.*, application note 2. "[T]he relevant substantive offense for purposes of evaluating § 2X1.1(b)(1) attempts is the fraud itself, not fraudulent deprivation of a particular sum." *DeSantis*, 237 F.3d at 612-13. Thus, failure to complete all the steps necessary to reach the full amount of the intended loss does not "mandate[ ] application of the three-level § 2X1.1(b)(1)

reduction for *attempted* substantive offenses." *Id.* at 612.

Cage was convicted of violating 18 U.S.C. § 1029(a)(2) when she pled guilty to Count I of the indictment, which charged that she used an unauthorized access device to obtain merchandise, cash, and services in excess of $1,000. Thus, the substantive offense that Cage was charged with was fraud with an unauthorized access device. There is no argument that Cage only attempted to engage in such fraud; rather, by pleading guilty to Count I of the indictment, Cage admitted that she engaged in this fraud. The fact that Cage may not have caused an actual loss of the same amount as the intended loss does not mean that she only attempted the crime. Therefore, Cage cannot receive a three level reduction for attempt because she was convicted of a fully completed crime.

III.

Cage additionally contests the district court's application of a two level enhancement under U.S.S.G. § 2B1.1(b)(9)(C)(i). Section 2B1.1(b)(9)(C)(i) (changed to U.S.S.G. § 2B1.1(b)(10)(C)(i) in 2004) provides that the base offense level should be increased two levels "[i]f the offense involved . . . the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." It applies when "a means of identification of an individual other than the defendant . . . is used without that individual's authorization unlawfully to produce or obtain another means of identification." U.S.S.G. § 2B1.1(b)(9)(C)(i), application note 8(C)(i) (2003). Examples of situations that it covers include a defendant's use of an individual's name and address or social security number to obtain a bank loan or credit card. *Id.*, application note 8(C)(ii).

Cage pled guilty to a violation of 18 U.S.C. § 1029(a)(2) for knowingly and with intent to

defraud using an unauthorized access device issued by USAA to Karl and Theresa Robinson to obtain merchandise, cash, and services in excess of $1,000. According to the presentence investigation report, Cage admitted using her position as a medical transcriber to obtain names, dates of birth, and social security numbers to procure credit reports on the Internet. Cage then used this information to apply for and obtain credit cards or loans and take over existing accounts.

Cage did not object to the aforementioned facts in the presentence report. Cage also did not object to the application of the enhancement. "The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object." *United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir. 2001). Therefore, it was permissible for the district court to accept as true the fact that Cage used her position to gather names, dates of birth, and social security numbers to obtain credit cards, loans, and bank accounts. These facts constitute the basis for applying the enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(C)(i) and mirror the examples listed in the application notes. The district court correctly applied the enhancement and may properly apply it on remand for the purpose of determining Cage's advisory guidelines range.[2]

IV.

For the foregoing reasons, we vacate Cage's sentence and remand for resentencing in light of *Booker* and this opinion.

---

[2]We note that the application of this enhancement did not violate the Sixth Amendment, because Cage admitted to the facts underlying the enhancement and the district court did not engage in any fact finding. *See Booker*, 125 S. Ct. at 756 ("Any fact . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt.").